ANGELA SWAN, ESQ. (SBN213793)
LAW OFFICE OF ANGELA SWAN
21151 S. Western Ave., Suite 177
Torrance, CA 90501
PH: (310) 755-2515
aswanlegal@gmail.com
Attorney for PETITIONER, Chapter Kris Jackson

IN THE UNITED STATES DISTRICT COURT
FOR CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aristocrat Motor Company Inc.<br>aka Aristocrat Motor Co, Inc.;<br>Armoco, Inc.; Aristocrat Motors Inc.<br>Chapter Jackson; Christopher Jackson<br><br>Petitioner's/Plaintiff's<br><br>vs.<br><br>Central Bank of The Midwest;<br>Santander Consumer USA Holdings Inc.;<br>Porsche North America;<br>GEICO General Insurance Company;<br>Michael Russaw; Jordan Kivett;<br>Kraft Tool Company Inc.;<br>Ronald G. Meyer; Marilyn Meyer;<br>T.E.N. Investments Inc. (a MN Corp.);<br>T.E.N. Investments Inc. (a FL Corp.);<br>T.E.N. Investments Inc. (a KS Corp.);<br>T.E.N. Investments Inc. (a MO Corp.)<br>T.E.N. Investments Inc. (a AZ Corp.);<br>T.E.N. Investments Inc. (a CA Corp.);<br>ARM PO Inc.; Spenserv Inc.;<br>Soave Enterprises LLC;<br>Soave Automotive Inc.;<br>Experian Information Solutions Inc.;<br>Equifax Inc.; Case Linden PC;<br>Case Linden Kurtz Buck PC;<br>Patric Shane Linden; Trevor M. Bond;<br>Jamie L. Welch; Kevin D. Case;<br>Horst Schwab; Edward Setzler;<br>Manfred Hetzel; Terry Buchholtz;<br>Stephanie Anne Turner;<br>Cythia L. Bishop; Yale Levin<br>Chrysler Capital LLC; FCA US LLC;<br>KCMER Investments Inc. d.b.a. Aristocrat<br>Motors; | Case No:<br><br>**PETITIONERS DEMAND & PETITION FOR ARBITRATION**<br><br>Federal Arbitration Act ("FAA"), 9 U.S.C.§§ 1 et seq. |

Titan International, Inc.; Anthony L. Soave;
Ernie Tumminia; Nick Allen;
Stellantis N.V.;
Stellantis Financial Services US Corp.
Santander Investment Services;
Santander Securities LLC;
Banco Santander, S.A.;
Santander US Capital Markets LLC (SanCap); Anthony McCoy;
Veritext Legal Solutions LLC;
Donna L. Policicchio;
Dealertrack Technologies, Inc.;
Mercedes-Benz Financial Services USA LLC;
Nathan Vaughan;
Kansas Department of Revenue (KDOR);
Johnson County District Attorney's Consumer Protection Unit;
Blane Markley; Justin R. Leck;
Spencer Fane LLP; Tivol Lewis;
Angela Lewitzke; Kevin Killiea;
Marion Battaglia; Robert Hellweg;
Angelique Soave;
Andrea Soave Provenzano;
Nico Schultz; Christopher Owen Corden;
Edward L. Schwartz; Michael L. Piesko;
Rick Brockhaus; Rachel M. Hofstatter;
Honigman LLP;
Veronica Ridgley-Williams;
Brenda Schwab, Tim Wennes; Ana Patricia

Respondents.

PETITIONER(S) DEMAND FOR ARBITRATION &
PETITION FOR ARBITRATION

Federal Arbitration Act ("FAA"), 9 U.S.C.§§ 1 et seq.

ANGELA SWAN, ESQ. (SBN213793)
LAW OFFICE OF ANGELA SWAN
21151 S. Western Ave., Suite 177
Torrance, CA 90501
PH: (310) 755-2515
aswan@angelaswanlaw.com
Attorney for PETITIONER(S),

## DEMAND FOR ARBITRATION

Petitioner'/Plaintiff' Aristocrat Motor Company Inc. (Aristocrat Motor Co. Inc.), ARMOCO, Inc., Chapter Jackson, Christopher Adam Jackson, Snowy Owl LLC d.b.a. Aristocrat Motors, and Aristocrat Motors Inc. by and through undersigned counsel, hereby demand all Defendants/Respondents arbitrate every one of the Petitioner(s) claims asserted within this petition against them under the Arbitration Agreement(s). If Defendant'/Respondent' fail to accede to that demand, then as soon thereafter as the matter may be heard in the above-entitled court. Petitioner will and hereby does petition this Court for an Order compelling arbitration before the American Arbitration Association with respect to all the Petitioner's claims asserted within this action (but not limited to) against the Defendants/Respondents. Petitioner(s) request that this Court retain jurisdiction to enter judgment based on the award of the arbitrator and that the within action otherwise be stayed and any state court lawsuits be stayed while the arbitration proceeds.

## *PETITION TO COMPEL ARBITRATION AND STAY PROCEEDINGS*

COMES NOW Petitioners Aristocrat Motors Company Inc. (Aristocrat Motor Co. Inc.), ARMOCO, Inc., Chapter Jackson, Christopher Adam Jackson, Snowy Owl LLC d.b.a. Aristocrat Motors, by and through undersigned counsel, and pursuant to Section 4 of the Federal Arbitration Act,

9 U.S.C. § 4, respectfully petitions this Court for an Order compelling the named Defendants, to arbitrate the dispute between the parties in accordance with the arbitration agreement(s) entered into by the Petitioners, and in support thereof states as follows:

Causes of Actions/ Claims to be Submitted to the Arbitrator Against Defendants are as follows:

Abuse of Process 2.) Civil Conspiracy 3.) Malicious Prosecution 4.) Violations of Section 15 U.S.C. 1681s-2(b) 5.) Negligent Noncompliance with FCRA -15 U.S.C. 1681o 6.) Willful Noncompliance with FCRA – 15 U.S.C. 1681n 7.) Negligence in handling consumer disputes 8.) Breach of duty of care to the Consumer 9.) Negligence 10.) Personal Injury 11.) Breach of UCC (Uniform Commercial Code (Provisions) - Enterprise Bank & Trust, Central Bank of the Midwest 12.) Breach of UCC Article 3 - Enterprise Bank & Trust, Central Bank of the Midwest 13.) Breach of UCC Section 3-420- Conversion of an Instrument 14.) Breach of UCC Section 3-406 and 3-405. Fraudulent activity – the Banks – Central Bank of the Midwest and Enterprise Bank & Trust allowed T.E.N. Investments to cash checks that were for the benefit of the dissolved corporation Aristocrat Motors Co Inc. 15.) Fraud 16.) Recission Based on Fraud 17.) Conversion 18.) Violations of the Fair Credit Reporting Act (FCRA) -15 U.S.C. 1681i &1681s-2(b) 19.) Fraudulent concealment 20.) Fraudulent misrepresentation 21.) Misrepresentation of Facts 22.) Emotional Distress (Intentional Infliction of Emotional Distress) 23.) Unjust Enrichment 24.) Unauthorized Practices of Law/ Misrepresentations 25.) Constructive Fraud 26.) Breach of Fiduciary Duty 27.) Unfair Business Practices 28.) Unfair and Deceptive Business Practices 29.) Court Fraud 30.) Breach of Contract 31.) Unauthorized Practices of Business -Corporate Fraud 32.) Forgery Fraudulent Assignment 33.) Fraudulent Assignment of a loan and obligation 34.) Identity Theft 35.) Bank Fraud 36.) Loan Fraud 37.) Civil Conspiracy/ Aiding and Abetting 38.) Violations of the Fair Credit Reporting Act (FCRA) 15 U.S.C. 1681 et seq. 39.) Slander 40.) Past Light 41.) Negligent Noncompliance with UCC 9-509 unauthorized disposition of collateral 42.) False Light 43.) Slander 44.) Libel 45.) Fraud / Civil Perjury 46.) Obstruction of Justice 47.) Usury 48.) Invasion of Privacy 49.) Intrusion 50.) Bank Fraud 18 U.S.C. 1344 51.) Right to Financial Privacy Act 12 U.S.C. 3401-3422 52.) Bank Breach of Fiduciary Duty (Central Bank of the Midwest) – 12 U.S.C. 24 53.) Money had and Received 54.) Violations of UCC 3-420 Conversion of Instrument – Enterprise Bank and Trust / Central Bank of the Midwest 55.) Violations of UCC 4-401- Enterprise Bank and Trust/ Central Bank of the Midwest 56.) Racketeer Influenced and Corrupt Organizations Act (RICO, 18 U.S.C. 1961-1968) 57.) Violation of UCC 4-202 – Enterprise Bank and Trust/ Central Bank of the Midwest 58.) Unlawful Surveillance and Tracking – Computer Fraud and Abuse Act (CFAA) 59.) Wiretapping/ Eavesdropping 60.) Trespass to Private Property Intrusion upon Seclusion

61.) Federal Wiretap Act 18 U.C.S. 2510-2522 62.) False Statements to Financial Institutions (18 U.S.C. 1014) False Statements to Influence Financial Institutions 63.) Mail and Wire Fraud (18 U.S.C. 1341 and 1343) using the mail and wires to execute schemes to defraud 64.) Unfair and Deceptive Practices 65.) Truth in Lending Act (TILA) 66.) Violations of the Fair Debt Collection Practices (FDCPA) 67.) Gramm-Leach -Billey Act 68.) Violations of the Fair Credit Reporting Act 69.) Electric Fund Transfer Act 70.) Conspiracy (18 U.S.C. 371) 71.) Identity theft (18 U.S.C. 1028) Stealing and misusing an Identity 72.) Violations of the Equal Credit Opportunity Act 73.) False Claims ACT 74.) Extortion (18 U.S.C. 875-877) 75.) Unfair Competition (15 U.S.C. 1125(a)) 76.) Federal Trademark Infringement (Lanham Act, 15 U.S.C. 1114) 77.) Trademark Dilution (15 U.S.C. 1125) 78.) Gross Negligence 79.) Tortious Interference with Contract 80.) Conspiracy to Commit Bankruptcy Fraud (18 U.S.C. 371) 81.) False Statements in Bankruptcy (18 U.S.C. 152) 82.) Bankruptcy Fraud (18 U.S.C. 157) 83.) California Invasion of Privacy Act (CIPA) 84.) Trespass to Chattels 84.) Intentional Tort 85.) Promissory Estoppel 86.) Successor Liability 87.) Willful Negligent Noncompliance with UCC 9- 203 Improper creation or enforcement of security interests 88.) Willful Negligent Noncompliance with UCC 9-509 Unauthorized disposition of collateral 89.) Willful Negligent Noncompliance with UCC 1-203 Breach of good faith obligation 90.) Willful Negligent Noncompliance with UCC 9-203 Failure to perfect security interests 91.) Willful Negligent Noncompliance with UCC Failure to comply with disposition requirements 92.) Willful Negligent Noncompliance with UCC 9-102 Misrepresentation of security interests or financing arrangements 93.) False Advertising 94.) Deceptive Trade Practices 95.) Loan Fraud 96.) Insurance Fraud 97.) Wrongful Death of a Fetus 98.) Orders and Judgments obtained by Court Fraud 99.) attempted assault and battery 100.) Wrongful Use of Civil Process 101.) Credit Deprivation 102.) Tortious Interference with Contract 103.) Fraudulent Interference with Contract 104.) *Failure to perfect security interest under UCC § 9-310; 105.)* Violation of UCC § 2-313 / 2-314 / 2-315 (Sales Warranties) 106.) *Breach of Express or Implied Warranty; 107.)* Unconscionable Contract (UCC § 2-302) 108.) Wrongful Prosecution

## ***Arbitration Agreements***

### ***Jurisdiction and Venue***

Jurisdiction is proper under the Arbitration Act (FAA), 9 U.S.C. §§ 1–16. This action is filed under § 4 of the FAA allows the Petitioner to petition to *compel arbitration* in *federal* district *court;* § 4 of the FAA provides for jurisdiction over a suit arising out of a controversy between 'the parties,' which most sensibly refers to those persons who are parties to the arbitration agreement—and who

therefore can be named in the petition to compel arbitration." § 4 of the FAA allows a party to petition to compel arbitration in federal district court based upon the forum selection clause within the agreement. Based upon the forum selection clause of the arbitration agreements, this court would have jurisdiction to compel arbitration. This Court has jurisdiction pursuant to 9 U.S.C. § 4 and 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs; the requests for the arbitration awards to be upward of $175,000,000; and injunctive relief and declaratory relief is sought. Venue is proper in this judicial district under 28 U.S.C. § 1391 because the arbitration agreement specifies this district as the forum.

***Multiple Arbitration Agreements Are Subject to This Dispute, Which the Defendants herein Are Subjected to ALL of the Arbitration Agreements Below:***

**I.** On or about the year of 2016, Petitioner Chapter Jackson and Defendant Central Bank of the Midwest entered into a written agreement ("Agreement"), a true and correct copy of which is attached hereto as (Exhibit 88 page 3 -Arbitration Agreement). A dispute has arisen between the parties relating to the issues herein, which fall squarely within the scope of the arbitration provision. Petitioner Chapter has demanded arbitration, the Defendants, Central Bank of the Midwest, have replied and agreed to attend arbitration (Exhibit 90 – Central Bank of the Midwest Letter Agreeing to Arbitrate), but have yet to comply with its terms and attend arbitration. Based upon the forum selection clause within the arbitration agreements, the Petitioners and each of them bring this action. The Forum Selection Clause contained in the Central Bank of the Midwest allows this petition to be filed in the forum convenient for the Petitioner. The Agreement contains a valid and enforceable arbitration provision, which states in relevant part: ARBITRATION PROVISION – This arbitration provision describes when and how a "Claim" (as defined below) between you and us may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons instead of having a trial in court in front of a judge and/ or jury….(b) "Claim" means any claim dispute or controversy between you and us that in any way arises from or relates to this agreement including disputes arising from actions or at omissions prior to the date of this agreement. "Claims" has the broadest possible meaning and includes initial claims, counterclaims, cross claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief). It also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this agreement….(d) Starting an Arbitration: Either you are we may require any claim to be arbitrated arbitration is started by giving written notice to the other party or the

intent to arbitrate this written notice shall also be given to the administrator… (f) IF YOU OR WE ELECT TO ARBITRATE A CLAIM, YOU WILL NOT HAVE THE RIGHT TO PURSUE THAT CLAIM IN COURT OR HAVE A JURY DECIDE THE CLAIM. ALSO, YOUR ABILITY TO OBTAIN INFORMATION FROM US IS MORE LIMITED IN AN ARBITRATION THAN IN A LAWSUIT. OTHER RIGHTS THAT YOU WOULD HAVE IF YOU WENT TO COURT MAY ALSO NOT BE AVAILABLE IN ARBITRATION…. Location and Costs of Arbitration: Any arbitration hearing that you attend must take place at a location reasonably convenient to you….(i) Governing Law: This Arbitration Provision is governed by the Federal Arbitration Act, 9 U.S.C. 1-16 (the FAA), and not by any state arbitration law.

**II.** On or about December 4, 2018, Petitioners Chapter Jackson, Aristocrat Motor Co. Inc., and Defendant Michael Russaw entered into a written agreement ("Agreement"), a true and correct copy of which is attached hereto as (Exhibits 1,10, 10a,10b Agreements). The Arbitration Agreement within the Aristocrat Motors Co. Inc. arbitration agreements forum selection clause requires the parties to litigate this dispute in California, where the Petitioner, Chapter Jackson, resides. (Exhibits 1, 18, 19, Arbitration Agreements – Contracts) The terms of said agreement extend to third-party claims arising out of or relating to disputes. The Agreement contains an arbitration provision, which states in relevant part: Any claim or dispute, whether in contract, tort, statute or otherwise ( including the interpretation and scope of this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this vehicle, this contract or any resulting transaction or relationship ( including any such relationship with third parties who do not sign this contract) shall, at your or our election be resolved by neutral, binding arbitration and not by court… The Arbitration hearing shall be conducted in the federal district in which you reside unless the Seller -Creditor…. We will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless law or the rules of the chosen arbitration organization require us to pay more… Any award by an arbitrator shall be in writing and will be final and binding on all parties, and subject to any limited right to appeal under the Federal Arbitration Act…. Neither you or we waive the right to arbitrate by using self-help remedies, such as repossession, or by filing an action. To recover the vehicle, to recover the deficiency balance, or for individual injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff, or transfer of this contract…

**III.** On October 7, 2013, Petitioner Christopher Jackson and Gateway One Lending and Financing aka Santander Consumer USA Holdings Inc., entered into a written agreement ("Agreement"), a true and correct copy of which is attached hereto as Exhibit 89 Arbitration Agreement. The Arbitration agreement within Petitioners Christopher Jackson agreement with Gateway One Lending and Financing, which Defendants Santander Consumer USA Holdings Inc. acquired Gateway One Lending and Financing and its assets on December 18, 2019, including Christopher Jackson arbitration agreement (Petitioner at this time is not in receipt of the entire arbitration agreement terms and only has part of the arbitration agreement). . It is further alleged that the terms of said agreement extend to third-party claims arising out of or relating to disputes concerning the Christopher Jackson retail installment contract. A request has been made to the Defendants, Santander Consumer USA Holdings Inc., to provide the full arbitration provision to the Christopher Jackson retail installment contract.

**IV.** Upon information and belief, Defendant T.E.N. Investments Inc. is a party to an arbitration agreement with Enterprise Bank & Trust. Said claims herein arise from claims that are subject to Enterprise Bank and Trust account holder's arbitration agreements with T.E.N. Investments Inc. It is further alleged that the terms of said agreement extend to third-party claims arising out of or relating to disputes concerning T.E.N. Investments Inc.'s account with Enterprise Bank & Trust. At this time, the precise terms of the arbitration agreement are not known to the Petitioners. A request is hereby made for the court to order the Defendants to provide said arbitration agreement to the Petitioners.

**V.** On or about June 22, 2018, the Petitioners, Christopher Jackson and Chapter Jackson entered into an arbitration agreement with Defendants Geico Insurance (Exhibit 39). Said claims herein arise from claims that are subject to policyholders' arbitration agreements. At this time, the precise terms of the arbitration agreement are not known to the Petitioners. It is further alleged that the terms of said agreement extend to third-party claims arising out of or relating to disputes concerning the policyholder's insurance account. A request is hereby made for the court to order the Defendants to provide said arbitration agreement to the Petitioners.

**VI.** On or about December 4, 2018, Petitioner Chapter Jackson and Defendant Russaw entered into an arbitration agreement. Upon information and belief, Petitioner Chapter Jackson, and Mercedes Benz Finserv USA LLC, and Mercedes-Benz Financial Services USA LLC are parties to an arbitration agreement with the financial institution. Said claims herein arise from claims that are subject to Mercedes-Benz Financial Services USA LLC's arbitration agreements with Chapter Jackson (Exhibit 39). It is further alleged that the terms of said agreement extend to third-party claims arising out of or relating to disputes concerning. At this time, the precise terms of the arbitration agreement are not

known to the Petitioners. A request is hereby made for the court to order the Defendants to provide said arbitration agreement to the Petitioners.

***<u>The Parties Are Bound by the Forum Selection Clause within the Arbitration Agreements for the Petitioners' claims arise out of the Arbitration Agreement contracts, are related to the agreement(s) or arising out of or in connection with the Agreement(s).</u>***

**VII.** The Petitioners' claims against the Defendants are related to agreements or arises out of or in connection with Arbitration agreements. The phrase "arising out of' is narrow. E.g., *EarthKind, LLC v. Lebermuth Co. Inc.*, No. 5: 19-CV- 00051-KDB-DCK, 2020 WL 1815903, at *5 (W.D.N.C. Apr. 9, 2020) ("Federal courts have repeatedly interpreted the scope of 'arising out of a contract more narrowly than language such as 'relating to,' 'associated with,' or 'arise in connection with' a contract."); *Valence/I, Inc. v. Apple Inc.* , No. 5: 16-CV-1-D, 2017 WL 2819768, at* I (E.D.N .C. June 28, 2017) ("Numerous courts have held that 'arising out of forum-selection clauses are narrower than forum-selection clauses that cover, for example, litigation 'arising out of or related to' an agreement, or 'arising out of or in connection with' an agreement.").

**VIII.** The ordinary meaning of the phrase "Arising out of' is "to originate from a specified source." *Reading Health Sys. v. Bear Stearns & Co.*, 900 F.3d 87, 99 (3d Cir. 2018); *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 389-90 (2d Cir. 2007). Claims arising under a law is not exempt from provisions governing disputes between contracting parties. See *Forest Cap., LLC v. BlackRock, Inc.*, 658 F. App'x 675, 680 (4th Cir.2016) ("Section 9-406 ... imposes no obligations on the account debtor; whatever 'obligation' the account debtor may have assumed to exist already"). "Federal courts have routinely rejected the suggestion that a claim arising under a law ... is exempt from provisions governing disputes between contracting parties." *Phillips*, 494 F.3d at 388 (compiling cases). Thus, the Petitioner's claims asserted within this petition are within the purview of the forum selection clause of the arbitration agreements. See *Hugel v. Corp. of Lloyd's*, 999 F.2d 206,209 (7th Cir. 1993) ("Regardless of the duty sought to be enforced in a particular cause of action, if the duty arises from the contract, the forum selection clause governs the action.").

***<u>FAA Requires This Case to be Filed Here within this Court Based upon the Language of the Arbitration Agreement(s) Provisions:</u>***

**IX.** Section 4 of the FAA impels "a federal district court to compel arbitration when [the court] would have jurisdiction over a suit on the underlying dispute." See: *Hill*, 603 F.3d at 771 (citing 9 U.S.C. § 4; *Moses H Cone Mem 'l Hosp.*, 460 U.S. at 24-27). The court has an independent duty to ensure that subject-matter jurisdiction is proper. *Henderson ex rel. Henderson v. Shinseki*, 562 U.S.

428, 434(2011). The Arbitration Provision specifically gives jurisdiction over the contract's arbitration provisions and credit application to conduct the Arbitration hearing in the Federal District in which the petitioners reside and or where it is most convenient for the Petitioner.

**X.** The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of “Arbitrability,” such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." See: *Rent-A-Center, West, Inc*., 561 U.S. at 68-69 (citing *Howsam v. Dean Witter Reynolds, Inc*., 537 U.S. 79, 83-85 (2002); *Green Tree Fin. C01p. v. Bazzle*, 539 U.S. 444,452 (2003)). When a contract contains an arbitration provision, "a presumption of arbitrability arises," particularly if the clause is broad. See: *RW Exploration Corp. v. Aguirre,* 45 F.3d 1455, 1462 (10th Cir. 1995) (citations omitted). Courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. *G Grp., 134 S. Ct*. at 1207 (citing *Howsam,* 537 U.S. at 86); see also *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 55 8-59 (1964) ("Once it is determined ... that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *Denhardt v. Trailways, Inc*., 767 F.2d 687, 690 (I0th Cir. 1985); *City of Lenexa v. C.L. Fairley Const. Co*., 805 P.2d 507,510.

***The forum selection clause selects the Federal District in which Petitioners reside, which is Mandatory, and or where it is most convenient for the Petitioners is Mandatory:***

**XI.** The forum selection clause at issue within the Arbitration Provision with Aristocrat Motors Co. Inc. ("The Arbitration hearing "shall" be conducted in the federal district in which you reside") and in the district court which is more convenient (Central Banki of the Midwest Arbitration Provision) for the Petitioners as detailed herein is mandatory because it uses the word "shall." *K.R. W Const, Inc.,* 598 F. Supp. 3d at 1143, 1143 n.76. The clause selects the Federal District in which the Petitioners resides and or is more convenient for the Petitioners in terms of the contract; therefore, the United States District Court, Central District of California (Western Division- Los Angeles) is the agreed forum.

**XII.** While the interpretation of contracts, including arbitration agreements, is generally a matter of state law, the FAA imposes rules beyond those found in state contract law. See: *Stolt-Nielsen S.A. vs. AnimalFeeds Int'l Corp*., 559 U.S. 662, 681 (2010) (citing *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624, 629-30 (2009); *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468,479 (1989). The existence of a "valid forum selection

clause prohibits a federal court from exercising jurisdiction if the parties contractually agreed to litigate the matter elsewhere." *K.R. W. Constr., Inc. v. Stronghold Eng 'g Inc.*, 598 F. Supp. 3d 1129, 1135-36). The federal courts have determined that the effect of a forum-selection clause is a matter of federal law. *K.R. W. Constr., Inc.*, 598 F. Supp. 3d at 1135.

## ***PARTIES***

**1.** Plaintiff Chapter Jackson is an individual who resides in the State of California.

**2.** Plaintiff Aristocrat Motor Company Inc. is a Missouri Corporation; newly incorporated/ reactivated by Chapter Jackson in October 2024.

**3.** Plaintiff Aristocrat Motors Inc. is a Kansas Corporation newly formed, reactivated by Chapter Jackson as president. On October 29, 2024. Aristocrat Motors Inc. filed a trademark application for "ARISTOCRAT MOTORS" with the United States Patent and Trademark Office, indicating its intent to protect and solidify its brand identity in the automotive online classic automobile market. (www.aristocratmotors.us)

**4.** Plaintiff ARMOCO, Inc. is a newly formed Kansas corporation and was reactivated on May 12, 2025, by Chapter Jackson.

**5.** Plaintiff Christopher Jackson is an individual residing in the State of Texas.

**6.** Plaintiff Snowy Owl LLC is a Missouri Limited Liability Company.

**7.** Defendant Central Bank of the Midwest is a corporation organized in the state of Missouri.

**8.** Defendant Enterprise Financial Services Corp. d.b.a. Enterprise Bank & Trust is a corporation organized in the state of Missouri. Enterprise Bank & Trust provides a comprehensive range of financial services tailored to meet the needs of both individual and corporate clients for T.E.N. Investments Inc.

**9.** Defendant Santander Consumer USA Inc. is a Texas Corporation. Santander Consumer USA Inc. is a leading consumer finance company specializing in vehicle finance and third-party servicing. Headquartered in Dallas, Texas, it operates as a wholly owned subsidiary of Banco Santander S.A., a global financial services group based in Spain.

**10.** Defendant TransUnion Holding Company Inc. is a corporation organized in the state of Illinois. TransUnion is a global information and insights company that provides credit reporting, fraud

detection, and data analytics services. It is one of the three major credit reporting agencies in the United States, alongside Experian and Equifax. The company serves over 65,000 businesses and collects information on more than one billion consumers in over 30 countries.

**11.** Defendant Santander Consumer USA Holdings Inc., is a Delaware corporation.

**12.** Defendant Porsche North America is a Georgia corporation.

**13.** Defendant GEICO General Insurance Company, a Nebraska corporation which is a company that specializes in providing auto insurance and operates across the United States. Which is a wholly owned subsidiary of Berkshire Hathaway Inc.

**14.** Defendant Michael Russaw is an individual in the state of California.

**15.** Defendant Kraft Tool Company Inc. is a Kansas corporation.

**16.** Defendant Ronald G. Meyer is an individual and the owner and officer of Kraft Tool Company, Inc.

**17.** Defendant Marilyn Meyer is an individual and the owner and officer of Kraft Tool Company Inc.

**18.** Defendant Ten Investments Inc. is a Minnesota corporation.

**19.** Defendant Ten Investments Inc. is a Florida corporation.

**20.** Defendant T.E.N. Investments Inc. is a Kansas corporation.

**21.** Defendant T.E.N. Investments Inc. is an Arizona corporation.

**22.** Defendant T.E.N. Investments Inc. is a California corporation.

**23.** Defendant Soave Enterprises LLC. is a Michigan Limited Liability Company; Soave Enterprises LLC is a privately held company headquartered in Detroit, Michigan. It operates as a diversified management and investment firm with interests in various industries, including real estate, automotive, and environmental services. The company was founded by Anthony Soave

**24.** Defendant Experian Information Solutions Inc. is a consumer reporting agency that regularly conducts business in the Northern District of California and is a California Corporation

**25.** Defendant Equifax is a corporation organized in the state of Georgia.

**26.** Defendant Case Linden Kurtz Buck P.C. is a Missouri corporation. It has represented multiple defendants in federal litigation initiated by Kris Chapter Jackson, in state and federal court, including the case *Jackson v. Santander Consumer USA Inc. et al* (Case No. 2:2023-cv-02403) in the U.S. District Court for the District of Kansas. In this case, she entered an appearance on behalf of defendants such as Santander Consumer USA Inc., Soave Automotive Group, T.E.N. Investments Inc., and others. Additionally, Defendant has named Petitioners in the federal case *T.E.N. Investments, Inc. v. Jackson et al*, filed in the U.S. District Court for the District of Kansas on February 27, 2025. The case numbered 2:2025cv02104, involves allegations of trademark infringement under the Lanham Act (15 U.S.C. § 1125). Other Petitioners in the case include Chapter Kris Jackson, Aristocrat Motor Company, Inc., Aristocrat Motors Inc., and Snowy Owl LLC.

**27.** Defendant Case Linden P.C. is a professional corporation organized in the state of Missouri. It has represented multiple defendants in federal litigation initiated by Chapter Jackson, in state and federal court, including the case *Jackson v. Santander Consumer USA Inc. et al* (Case No. 2:2023-cv-02403) in the U.S. District Court for the District of Kansas. In this case, she entered an appearance on behalf of defendants such as Santander Consumer USA Inc., Soave Automotive Group, T.E.N. Investments Inc., and others. Additionally, Defendant has named Petitioners in the federal case *T.E.N. Investments, Inc. v. Jackson et al*, filed in the U.S. District Court for the District of Kansas on February 27, 2025. The case numbered 2:2025cv02104, involves allegations of trademark infringement under the Lanham Act (15 U.S.C. § 1125). Other Petitioners in the case include Chapter Kris Jackson, Aristocrat Motor Company, Inc., Aristocrat Motors Inc., and Snowy Owl LLC.

**28.** Defendant Patric Shane Linden is an individual who resides in the state of Missouri and an employee/ partner/officer of Case Linden PC. Linden and Case Linden Kurtz Buck P.C., a Missouri corporation. Linden has represented multiple defendants in state and federal litigation initiated by Kris Chapter Jackson, in state and federal court, including the case *Jackson v. Santander Consumer USA Inc. et al* (Case No. 2:2023-cv-02403) in the U.S. District Court for the District of Kansas. In this case, she entered an appearance on behalf of defendants such as Santander Consumer USA Inc., Soave Automotive Group, T.E.N. Investments Inc., and others. Additionally, Defendant has named Petitioners in the federal case *T.E.N. Investments, Inc. v. Jackson et al*, filed in the U.S. District Court for the District of Kansas on February 27, 2025. The case numbered 2:2025cv02104, involves allegations of trademark infringement under the Lanham Act (15 U.S.C. § 1125). Other Petitioners in the case include Chapter Kris Jackson, Aristocrat Motor Company, Inc., Aristocrat Motors Inc., and Snowy Owl LLC.

**29.** Defendant Trevor M. Bond is an individual who resides in Leawood Kansas and a former employee /partner of Case employee of Case Linden P.C. Linden and Case Linden Kurtz Buck P.C., both Missouri corporations. Bond has represented multiple defendants in state and federal litigation initiated by Chapter Jackson, in state and federal court, including the case *Jackson v. Santander Consumer USA Inc. et al* (Case No. 2:2023-cv-02403) in the U.S. District Court for the District of Kansas. In this case, she entered an appearance on behalf of defendants such as Santander Consumer USA Inc., Soave Automotive Group, T.E.N. Investments Inc., and others.

**30.** Defendant Jamie L. Welch is an individual who resides in the state of Kansas and employee of Case employee of Case Linden PC. Linden and Case Linden Kurtz Buck P.C., both Missouri corporations. Jamie L. Welch has represented multiple defendants in federal litigation initiated by Chapter Jackson, in state and federal court, including the case *Jackson v. Santander Consumer USA Inc. et al* (Case No. 2:2023-cv-02403) in the U.S. District Court for the District of Kansas. In this case, she entered an appearance on behalf of defendants such as Santander Consumer USA Inc., Soave Automotive Group, T.E.N. Investments Inc., and others. Additionally, Defendant has named Petitioners in the federal case *T.E.N. Investments, Inc. v. Jackson et al*, filed in the U.S. District Court for the District of Kansas on February 27, 2025. The case numbered 2:2025cv02104, involves allegations of trademark infringement under the Lanham Act (15 U.S.C. § 1125). Other Petitioners in the case include Chapter Kris Jackson, Aristocrat Motor Company, Inc., Aristocrat Motors Inc., and Snowy Owl LLC.

**31.** Defendant Kevin D. Case is an individual who resides in the state of Missouri and an employee/partner/officer of Case employee of Case Linden PC. Linden and Case Linden Kurtz Buck P.C., a Missouri corporation. Case has represented multiple defendants in federal litigation initiated by Chapter Jackson, in state and federal court, including the case *Jackson v. Santander Consumer USA Inc. et al* (Case No. 2:2023-cv-02403) in the U.S. District Court for the District of Kansas. In this case, she entered an appearance on behalf of defendants such as Santander Consumer USA Inc., Soave Automotive Group, T.E.N. Investments Inc., and others. Additionally, Defendant has named Petitioners in the federal case *T.E.N. Investments, Inc. v. Jackson et al*, filed in the U.S. District Court for the District of Kansas on February 27, 2025. The case numbered 2:2025cv02104, involves allegations of trademark infringement under the Lanham Act (15 U.S.C. § 1125). Other Petitioners in the case include Chapter Kris Jackson, Aristocrat Motor Company, Inc., Aristocrat Motors Inc., and Snowy Owl LLC.

**32.** Defendant Horst Schwab is an individual and former officer/owner/shareholder of Aristocrat Motor Co. Inc. a former Missouri corporation, and a former Kansas corporation and ARMCO, Inc., a former Kansas corporation.

**33.** Defendant T.E.N. Investments Inc. is a Missouri corporation.

**34.** Defendant Stephanie Anne Turner aka Stephanie Gador, is an individual who resides in the state of Kansas and former employee of T.E.N. Investments Inc., a Missouri corporation, and it is believed she was employed by Soave Automotive Group LLC a Missouri corporation.

**35.** Defendant Kayce Jones is an individual and former employee of T.E.N. Investments Inc., a Missouri corporation, who purports to have held a position within the title department, and it is believed she was employed by Soave Automotive Group LLC, a Missouri corporation.

**36.** Defendant Cythia L. Bishop is an individual and former employee and notary of T.E.N. Investments Inc., a Missouri corporation, who notarized a document in the deal jacket for a nonexistent person by the name of Donald G. Meyer she alleged that Donald G. Meyer appeared before her to notarize documents for the subject vehicle; it is believed she was employed by Soave Automotive Group LLC, a Missouri corporation.

**37.** Defendant Chrysler Capital LLC is a limited liability company formed in the state of Delaware. Chrysler Capital is a registered trademark of FCA US LLC and is licensed to Santander Consumer USA Inc. It serves as the full-service finance provider for FCA US and its dealers, offering a range of automotive financial services.

**38.** Defendant FCA US LLC is a limited liability company formed in the state of Delaware.

**39.** Defendant Yale Levin is an individual who resides in Michigan and Executive Vice President officer/shareholder of Soave Enterprise Inc. and is affiliated with T.E.N. Investments Inc.

**40.** Defendant Soave Automotive Inc. is a Missouri corporation.

**41.** Defendant ARM PO Inc. is a Missouri corporation.

**42.** Defendant Spenserv Inc. serves as a registered agent for various entities across multiple states, just recently said company resigned from Aristocrat Motor Co. Inc. and ARMCO, Inc. Spenserv, Inc. is incorporated in Florida, it maintains a presence in multiple states to provide registered agent services and support to various businesses in the State of Kansas and Missouri.

**43.** Defendant Edward A. Setzler is an individual and former officer/shareholder/ owner of Aristocrat Motor Co. Inc. and ARMCO, Inc.who lives in the state of Missouri.

**44.** Defendant Manfred Hetzel is an individual and former officer/shareholder/ owner of Aristocrat Motor Co. Inc. and ARMCO, Inc. who lives in the state of Missouri.

**45.** Defendant Terry Buchholtz is an individual and former officer/shareholder/ owner of Aristocrat Motor Co. Inc. and ARMCO, Inc who lives in the state of Missouri.

**46.** Defendant Jordan Kivett is an individual and former employee of Soave Automotive Group and T.E.N. Investments Inc. who lives in the state of Missouri.

**47.** Defendant KCMER Investments Inc. d.b.a. Aristocrat Motors is a Missouri corporation.

**48.** Defendant Titan International, Inc. is a Detroit corporation. A Detroit-based company with ownership in a diverse portfolio of companies consisting of automobile dealerships, including T.E.N. Investments Inc., real estate, metals recycling, and other diversified holdings. Defendant Anthony L. Soave became a director of the Company in 1994. https://in.marketscreener.com/insider/ANTHONY-SOAVE-A03GES/news/ https://ir.titan-intl.com/governance/board-of-directors/person-details/default.aspx?ItemId=a571d00d-495f-453d-a925-21668ab379d9 https://www.marketwatch.com/investing/stock/tz4/company-profile?countrycode=de&iso=xber&pid=43538

**49.** Defendant Anthony L. Soave lives in the state of Michigan; is the founder, Chairman, and Chief Executive Officer of Soave Enterprises LLC, he operates as director of multiple companies and asserts he is on the board of directors for T.E.N. Investments Inc., Soave Automotive Group Inc, Soave Agricultural Group, KCMER Investments Inc. d.b.a Aristocrat Motors, ARM PO INC., Titan International, Inc, Premier Steel LLC, Soave Enterprises LLC is a privately held, Detroit-based holding company. https://www.marketscreener.com/insider/ANTHONY-SOAVE-A03GES/ https://ir.titan-intl.com/governance/board-of-directors/person-details/default.aspx?ItemId=a571d00d-495f-453d-a925-21668ab379d9 https://soaveenterprises.tumblr.com https://www.dbusiness.com/daily-news/detroit-industrialist-tony-soave-launches-kinsale-golf-club-in-naples/ https://www.linkedin.com/in/tony-soave-5322ba11 https://www.fptscrap.com/ferrous-processing-trading-builds-success-with-advanced-equipment-and-strong-leadership/

**50.** Defendant Ernie Tumminia is an individual and is the former owner of Aristocrat Motor Co., Inc.; and ARMCO, Inc. Ernie Tumminia is the owner and operator of Tumminia Mazda, a family-run

Mazda dealership located in Olathe, Kansas. The dealership operates under the legal entity TUMMINIA MZ INC a Kansas corporation.

**51.** Defendant Nick Allen is an individual and is the former owner of Aristocrat Motor Co. Inc. and ARMCO, Inc. who lives in the state of Kansas.

**52.** Defendant Stellantis N.V. is a multinational automotive corporation formed in January 2021 through the merger of Fiat Chrysler Automobiles (FCA) and PSA Group. The company is incorporated in the Netherlands as a public limited company (N.V.) and is headquartered in Hoofddorp, Netherlands; its U.S. operations, including brands like Chrysler, Dodge, Jeep, and Ram, are managed through its subsidiary, FCA US LLC.

**53.** Defendant FCA US LLC is a Delaware-formed limited liability company with its principal place of business in Auburn Hills, Michigan.

**54.** Defendant Stellantis Financial Services US Corp. (State of Incorporation: Delaware_ is a wholly owned subsidiary of Stellantis N.V., providing automotive financing solutions for Stellantis brands such as Chrysler, Dodge, Jeep®, Ram, FIAT, and Alfa Romeo in the United States. Stellantis Financial Services US Corp. operates as a captive finance company, offering a range of financial products including retail loans, leases, dealer floorplan financing, and commercial lending solutions. It functions independently from Stellantis N.V., with its own management and customer support teams, though it remains an affiliate of FCA US LLC.

**55.** Defendant Santander Investment Services is a division of Santander Securities LLC, a registered broker-dealer and investment adviser operating in the United States. It is affiliated with Santander Bank, N.A., and offers financial planning and investment advisory services to clients across the U.S.,

**56.** Defendant Santander Securities LLC, a Delaware-formed limited liability company that operates as a registered broker-dealer and investment adviser in the United States. It is a wholly owned subsidiary of Santander Holdings USA, Inc., which is part of the global financial group Banco Santander, S.A.

**57.** Defendant Banco Santander, S.A. is a leading multinational financial services company; in the United States, Banco Santander operates through its wholly owned subsidiary, Santander Holdings USA, Inc. (SHUSA), which is incorporated in Delaware and headquartered in Boston, Massachusetts.

Banco Santander, S.A. is a publicly traded company listed on the Bolsa de Madrid under the ticker symbol SAN. as of March 31, 2025,

**58.** Defendant Santander US Capital Markets LLC (SanCap) is a Delaware-formed limited liability company and serves as the institutional broker-dealer for Santander in the United States. It operates under Santander Corporate & Investment Banking, focusing on services such as fixed income, structured products, equities, and capital markets.

**59.** Defendant Anthony McCoy is an individual and an employee holding a position as a Senior Credit Analyst at Chrysler Capital, a division of Santander Consumer USA. His professional profile indicates that he is based in Fort Worth, Texas

**60.** Defendant Veritext Legal Solutions LLC is incorporated in the state of New Jersey. The company was officially incorporated on June 30, 2005, and its principal office is located at 290 West Mount Pleasant Avenue, Livingston, NJ 07039. Defendants hold themselves to be professional providers of Court Reporting: Utilizing a network of over 10,000 certified court reporters to provide accurate and timely transcripts. Remote Depositions: Facilitating virtual depositions with secure video conferencing technology. Legal Videography: Providing professional video recording of depositions and courtroom proceedings. Exhibit Management: Offering tools for digital exhibit capture and management. Transcription Services: Delivering precise transcriptions for various legal proceedings and Litigation Support. Defendants allege to be dedicated to maintaining ethical standards in court reporting, ensuring impartiality, equal access to services, and transparent compensation practices.

**61.** Defendant Donna L. Policicchio is an individual and employee and for Veritext Legal Solutions LLC Donna L. Policicchio is a Certified Shorthand Reporter (CSR) licensed in the State of Illinois. She resides at 13809 S Creekside Ct, Homer Glen, IL 60491.

**62.** Defendant Dealertrack Technologies, Inc. is a Delaware corporation that provides web-based software solutions for the automotive retail industry and provided such for the allege loan herein. Their services include dealer management systems (DMS), finance and insurance (F&I) tools, digital retailing, and registration and titling services. Dealertrack is part of Cox Automotive's portfolio of brands.

**63.** Mercedes-Benz Financial Services USA LLC is a Delaware-incorporated limited liability company, it operates as the captive financial services arm of Mercedes-Benz in the United States, providing financing, leasing, and insurance solutions for Mercedes-Benz vehicles. Mercedes-Benz

Financial Services USA LLC is the captive financial services provider for Mercedes-Benz vehicles in the United States, offering financing, leasing, and insurance solutions. The company operates under Mercedes-Benz Mobility AG, a division of the Mercedes-Benz Group.

**64.** Defendant Nathan Vaughan is an individual and car salesman/ employee of T.E.N. Investments Inc. and Soave Automotive Group Inc. and posed as the car salesman for a dissolved corporation, Aristocrat Motor Co. Inc., in 2018.

**65.** Defendant Kansas Department of Revenue (KDOR) – Division of Vehicles; Defendants is a government agency in the state of Kansas; The Kansas Department of Revenue (KDOR) – Division of Vehicles oversees driver licensing, vehicle registration, and titling.

**66.** Defendants Johnson County District Attorney's Consumer Protection Unit assists in addressing fraudulent, deceptive, or unfair business practices; a public-sector agency dedicated to protecting consumers.

**67.** Defendant Blane Markley is an individual Kansas resident, attorney with Spencer Fane LLP and Vice President of Spenserv, Inc. Defendant just recently resigned from from the dissolved corporations Aristocrat Motor Co., Inc., and ARMOCO, Inc.

**68.** Defendant Justin R. Leck is an individual, Kansas resident, attorney with Spencer Fane LLP, and Vice President of Spenserv, Inc. Defendant recently resigned from the dissolved corporations Aristocrat Motor Co., Inc. and ARMOCO, Inc.

**69.** Defendant Spencer Fane LLP is a law firm incorporated in Missouri, which formerly represented the dissolved corporations Aristocrat Motor Co. Inc., and ARMOCO, Inc., until just recently 2024.

**70.** Defendant Tivol Lewis is an employee of the Consumer Fraud Division of the Johnson County District Attorney who resides in Kansas. Lewis is actively involved in consumer protection. She serves as the Western Region Deputy Director for the North American Consumer Protection Investigators (NACPI). In this role, she represents the Johnson County District Attorney's Office, working to address consumer fraud and related issues. Lewis conducted the investigation regarding the petitioner, Chapter Jackson, a consumer complaint.

**71.** Defendant Angela Lewitzke is an individual who resides in Kansas and holds position(s) as an officer as Secretary and or Assistant Secretary for ARM PO, Inc., T.E.N. Investments Inc., Soave Automotive Group, Inc., KCMER Investments Inc. d..b.a. Aristocrat Motors.

**72.** Defendant Kevin Killiea is an individual who resides in Kansas and holds position(s) as an officer as Vice President and or Secretary for ARM PO, Inc., T.E.N. Investments Inc., Soave Automotive Group, Inc., KCMER Investments Inc .d.b.a Aristocrat Motors. https://www.zippia.com/aristocrat-motors-careers-268897/executives/

**73.** Defendant Marion Battaglia is an individual who resides in Leawood, Kansas and holds position(s) as President for ARM PO, Inc., T.E.N. Investments Inc., Soave Automotive Group, Inc., KCMER Investments Inc d.b.a. Aristocrat Motors. He alleges to be the President of Soave Automotive Group, a purported division of Soave Enterprises that owns both Aristocrat Motors and Mercedes-Benz of Kansas City. https://aristocratmotors.wordpress.com/2013/01/04/executive-spotlight-marion-battaglia/ https://www.theofficialboard.com/biography/marion-battaglia-184d8 https://www.soave.com/wp-content/uploads/2018/03/TodayKS-2017Summer.pdf https://www.porschekansascity.com/about-us/staff/ https://www.aristocratmotors.com/about-us/staff/

**74.** Defendant Robert Hellweg is an individual who resides in Kansas.

**75.** Defendant Angelique Soave is an individual who resides in Michigan and Vice President of Soave Enterprises.

**76.** Defendant Andrea Soave Provenzano is an individual who resides in Michigan and Vice President of Soave Enterprises.

**77.** Defendant Nico Schultz is an individual who resides in Michigan and Senior Vice President of Soave Enterprises.

**78.** Defendant Christopher Owen Corden is an individual who resides in Michigan and Senior Vice President of Soave Enterprises.

**79.** Defendant Edward L. Schwartz is an individual who resides in Michigan and Executive Vice President of Soave Enterprises.

**80.** Defendant Michael L. Piesko is an individual who resides in Michigan and Executive Vice President of Soave Enterprises.

**81.** Defendant Rick Brockhaus is an individual who resides in Michigan and Executive CFO, Treasurer & Sr. President of Soave Enterprises. https://www.linkedin.com/in/rick-brockhaus-037ba2110

**82.** Defendant Rachel M. Hofstatter is an individual and an attorney with Honigman LLP who resides in Washington D.C. and filed suit against the Petitioners to obtain the trademark Aristocrat Motor; Defendant sued the Petitioners; malicious suit for trademark infringement and unfair competition.

**83.** Defendant Honigman LLP is incorporated in Detroit, Michigan, and filed against the Petitioners malicious suit for trademark infringement and unfair competition.

**84.** Defendant Veronica Ridgley-Williams is an individual and an employee of Santander Consumer USA Inc. Defendant serves as an Executive Resolution Specialist at the company. In this role, she is responsible for developing the complaints program and collaborating across various departments to address and resolve customer concerns. https://www.linkedin.com/in/veronica-ridgley-williams-4087661b5

**85.** Defendant, Brenda Schwab, is an individual who resides in the state of Missouri and agent and trustee and over the Estate & Trust of Horst Schwab.

**86.** Defendant Tim Wennes is an individual and the CEO of Santander Consumer USA Inc and CEO of Santander Bank NA (SBNA).

**87.** Defendant Christiana Riley is an individual and the CEO of Santander Consumer USA Inc.

**88.** Defendant Ana Patricia Botín, an individual who resides in Spain, and is the Executive Chair of Banco Santander, S.A., , holds approximately 0.22% of the shares of Banco Santander.

**89.** Defendant Gretchen Gold, an individual who resides in Kansas City, Mo, and is an attorney at Lathrop GPM LLP.

**90.** Defendant Lathrop GPM LLP is incorporated in the state of Missouri and is a firm.

## ***PRELIMINARY STATEMENT***

The petitioners bring this action to compel arbitration to submit their claims and damages to the Arbitrator in accordance with multiple arbitration agreements arising out of claims from a credit application and contract agreement, Bankcard holder agreements, and retail installment contracts. This petition arises from a wide-ranging RICO scheme involving fraudulent misrepresentations, identity theft, bank and wire fraud, civil conspiracy, court fraud, abuse of power, abuse of process, negligence, and consumer protection violations that culminated in severe personal, financial, and legal harm.

## *INTRODUCTION*

**91.** False;

**92.** Malicious;

**93.** Strategically and tactically calculated and timed to inflict maximum pain and suffering on the Plaintiffs.

**94.** Defendants in conspiracy with multiple attorneys and law firms, banks, and lenders were soulless, motivated by greed, in abject disregard of the truth and the most fundamental precepts of human decency.

**95.** Santander Consumer USA Inc. has an impeccable reputation for predatory lending schemes against minorities.

## *FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF TO BE SUBMITTED TO THE ARBITRATOR*

This section will contain detailed facts giving rise to the causes of actions/ claims to be submitted to the Arbitrator, organized chronologically or by scheme/theme (e.g., "The Fraudulent Loan Scheme," "Misrepresentations During Litigation," "Abuse of the Legal Process").

**96.** It all started in 1963 when Defendant Horst founded Aristocrat Motors Co. Inc., a car dealership located at 1620 Baltimore, Kansas City, Missouri 64108.

**97.** In 1974, Aristocrat Motors Co., Inc. continued to grow, and the dealership was relocated to 1535 Baltimore, Kansas City, Missouri 64108.

**98.** In September 1985, Horst's dealership, Aristocrat Motors, Co. Inc., opened in Kansas, with the location being 9400 West 65th Street, Merriam, KS 66203.

**99.** Aristocrat Motor Co Inc., principal place of business and corporate headquarters address as of April 2, 1999, -9400 West 65th Street, Shawnee Mission, KS 66203. (Evidence by Exhibits 2 - Annual Registration Report; and Exhibits 3, 4, 5-Aristocrat Motor Co Inc. City of Merriam 1999 Occupational License Renewal –Aristocrat Motor Co Inc Check – detailing the same address)

**100.** Over time, Defendants Horst, Terry Buchholtz, Edward A. Setzler, Manfred Hetzel grew Aristocrat Motor Co. Inc. by acquiring Polo Motors, Jaguar from Jack Roach, Land Rover, Audi, and Porsche from Art Bunker, and adding Ferrari to the list of franchises that his company/ dealership, Aristocrat Motor Co. Inc., represented.

**101.** On November 25, 1998, Defendants obtained a 1999 Occupational License Renewal, asserting that Aristocrat Motor Co. Inc. filed with the City of Merriam; Horst claims he is the owner of Aristocrat Motor Co. Inc. (Exhibit 3) and that the address of Aristocrat Motor Co. Inc. is 9400 W. 65th Street Shawnee Mission, Kansas 66203.

**102.** On April 02, 1999, the Defendant Horst Schwab asserts himself to be the president of Aristocrat Motor Co. Inc.; Defendant Manfred Hetzel asserts himself to be the Vice President of Aristocrat Motor Co. Inc., Defendant Buchholz purports to be the owner and treasurer of Aristocrat Motor Co. Inc., and Defendant Edward Setzler purports to be the secretary of Aristocrat Motor Co. Inc. and asset that the address of Aristocrat Motor Co. Inc is 9400 West 65th Street Shawnee Mission KS 66203 (Exhibit 2, 4)

***Dissolution of Aristocrat Motor Co. Inc. – Firm Name- Aristocrat Motors***

**103.** On May 11, 1999, the Defendants Horst Schwab as President of Aristocrat Motor Co. Inc. and Edward Setzler as Secretary of Aristocrat Motor Co. Inc., filed with the Kansas Secretary of State a certificate of Amendment and notary changing the name of Aristocrat Motor Company, Inc. to ARMOCO, Inc. (Exhibit 8)

**104.** On November 30, 1999, Defendants Ernie Tumminia, and Nick Allen obtained a 2000 Occupational License Renewal with the City of Merriam. Defendants Nick Allen and Ernie Tumminia asserts to be the Owner/Manager of Aristocrat Motor Co. Inc.; moreover, on the Occupational license renewal, Defendants Allen and Tumminia claims that the firm name for Aristocrat Motor Co. Inc. is Aristocrat Motors and the address for Aristocrat Motor Co. Inc. / Firm name Aristocrat Motors is 9400 W 65th Merriam, KS, 66203. Both defendants also assert that Aristocrat Motor Co. Inc. is an Automotive Dealership (Exhibit 6).

**105.** In March 2000, Aristocrat Motor Co Inc. filed its 2000 Annual Registration Report with Missouri Secretary of State, which indicates that Defendants Schwab as President, Manfred as vice President, Setzler as secretary, and Buchholtz as treasurer, changed their principal place of business address for Aristocrat Motor Co Inc. from 9400 West 65th Street Shawnee Mission, KS 66203 to 13918 Mt. Olivet Road, Smithville, Missouri, 64089. (Exhibit 7, Aristocrat Motor Co Inc. 2000 Annual Report).

**106.** On July 31, 2000, the Defendants Horst Schwab as President of ARMOCO, Inc., formally known as Aristocrat Motor Co. Inc., Edward Setzler as Secretary of ARMOCO, Inc., formally known as Aristocrat Motor Co. Inc., Manfred Hetzel as Vice President of ARMOCO, Inc. and Terry

Buchholtz as Treasurer of ARMOCO, Inc. Aristocrat Motor Co Inc. filed a Dissolution by Written Consent with the Secretary of State Corporation Division of Kansas., stating they are all stockholders with voting power of ARMOCO Inc. formally known as Aristocrat Motor Co. Inc. Defendant Edward declared under the penalty of perjury that all stockholders voted on the dissolution of ARMOCO, Inc. formally known as Aristocrat Motor Co. Inc. (See: Exhibit 8 vs. Exhibit 9)

**107.** After 36 years of Horst's, Terry Buchholtz, Edward A. Setzler, and Manfred Hetzel's ownership of Aristocrat Motors Co. Inc., the corporation and dealership purportedly had a name change to ARMOCO, Inc. and dissolved on July 31, 2000, however as detailed herein after the corporation Aristocrat Motor Co. Inc. had allegedly dissolved and named had changed to ARMOCO, Inc. the Defendants continued to operate (operating dissolved) Aristocrat Motor Co. Inc. as such name and issue auto loans as the lender and assignee of dealership loans at the address 9400 West 95th Street, Merriam Kansas 66204. Evidence by: Exhibits 10, 10A, 10B – On December 4, 2018 - Aristocrat Motor Co. Inc. presented a Dealer Credit Application to the Plaintiff, Chapter Exhibit 8 – Aristocrat Motor Company Inc. certificate of Amendment of name change to ARMOCO, Inc., Exhibit 9, Dissolution by Written Consent of the Corporation ARMOCO, Inc.; Exhibit 11, details a Application Status report was generated from the Aristocrat Motor Co. Inc. dealer credit application (Exhibits 10,10A,10B) from the Defendants Chrysler Capital/ Santander Consumers on behalf of " Aristocrat Motor Co. Inc.: Exhibit 12 details On January 9, 2019 a Chrysler Capital Contract Status documents was generated on behalf of Aristocrat Motor Co. Inc.; On October 21, 2024 the Defendants Blane Markley, and Spenserv, Inc. filed with the state of Missouri a resignation of registered agent for the dissolved corporation Aristocrat Motor Co. Inc., evidence by Exhibits 13, 13A; On October 02, 2024 the Defendants Spenserv, Inc. and Blane Markley filed a certificate of resignation of resident agent without appointing a successor on behalf of the dissolved corporation ARMOCO, Inc with the Kansas Secretary of State evidence by Exhibit 14; On November 29, 2024 Defendants Justin Leck and Spenserv, Inc filed with the Kansas Secretary of State a certificate of resignation of resident agent without appointing a successor evidenced by Exhibit 15; and lastly -the link provided below gives evidence that Aristocrat Motor Co. Inc. was voluntary dissolved back in 2000, https://bsd.sos.mo.gov/BusinessEntity/BusinessEntityDetail.aspx?ID=506043&page=beSearch

**108.** Defendants Spenserv Inc. Blane Markley, Justin Leck, mispresented themselves to the public as the registered agent of Aristocrat Motor Co. Inc. and Armoco, Inc. Said Defendants misrepresented facts for nearly 24 years after the company was dissolved, and only after the Plaintiff Chapter discovered the issues herein regarding Aristocrat Motor Co. Inc did the defendants file resignations as

the agents. Defendants Spenserv Inc. were negligent and failed to file the resignation of a registered agent in the year 2000 when the company Aristocrat Motors Co. Inc. and Armoco, Inc. were dissolved. Said Defendants filed the resignation nearly 24 years after the companies Aristocrat Motors Co. Inc. and Armoco, Inc. were dissolved and failed to place the public on notice that the companies did not legally exist. Defendants Spenserv Inc. held themselves out as the registered agent of Aristocrat Motor Co. Inc, giving the public the false illusion that the corporation Aristocrat Motor Co. Inc. had not been dissolved.

**109.** Although Aristocrat Motor Co. Inc. was dissolved in August 2000, nearly 24 years after the company was dissolved on October 21, 2024 Defendants Spenserv Inc, filed a statement of Resignation of a registered Agent was filed with Missouri Secretary of State (Exhibits 13, 13A - Statement of Resignation/ Letter) stating the name of the Cooperation is - ARISTOCRAT MOTOR COMPANY INC. attached to the resignation of registered agent is letter from the Defendants Spenser, Inc. vice present dated October 2, 2024, Directed to the Defendant Schwab who is held himself out as the president of Aristocrat Motor Co Inc after it was dissolved. The Resignation of Aristocrat Motors Co. Inc. the registered agent states in short:

***Re: Aristocrat Motor Company, Inc.***
***Missouri Business Entity No. F00346883***

"Spenserv, Inc. is a corporation organized by our firm to serve as the registered agent for our clients and is currently the registered agent for said Company. As you know, said Company was voluntarily dissolved on August 4, 2000."

**110.** On March 26, 2015, Aristocrat Motor Co., Inc. and Defendants Porsche North America offered a new 2015 Porsche Cayenne for sale at the alleged Porsche dealer Aristocrat Motor Co., Inc. dealership located in Shawnee, KS. (Exhibit 16- Carfax REPORT)

**111.** On April 03, 2015, Defendant Kraft Tool allegedly purchased a 2015 Porsche Cayenne from the dissolved corporation Aristocrat Motor Co. Inc. dealership (Exhibit 16-page 2).

**112.** On or about October 24, 2017, the Defendant Kraft Tool, Kraft Tool Company, Donald G. Meyer, Ronald G. Meyer, Marilyn Meyer, attempted to sell the 2015 Porsche Cayenne (VIN Number WP1AB2A26FLA59974) back to the alleged dissolved corporation Aristocrat Motor Co. Inc. However, said defendants did not fill out the title paperwork for the sale of the Porsche; therefore, the transfer was incomplete and never occurred, and to date and from December 4, 2018, through May 2025, the vehicle has had only one single owner, Defendant Kraft Tool.

**113.** On or about November 2018, the Plaintiff was interested in purchasing a vehicle from the Defendant Porsche North America and inquired and was directed to one of Porsche north Americas approved dealerships located at 9400 West 65th Street, Merriam, Kansas 66204 The Plaintiff Chapter visited the Aristocrat Motors Co. Inc. website https://www.aristocratmotors.com/new-vehicles/porsche/ in search of purchasing a Porsche. Porsche North America advertised/ advertises at the alleged dealership, Aristocrat Motor Co. Inc., located at 9400 West 65th Street, Merriam, Kansas 66203, said Porsche dealer has Porsche vehicles for sale at the dissolved entity's Aristocrat Motor Co. Inc. location. The website advertises the logo and name of Aristocrat Motor Co., Inc., firm name "Aristocrat Motors" (Exhibit 6- Firm Name). Aristocrat Motors (firm name) and Porsche North America vehicles, and the Porsche band logo, are advertised as an automobile dealership. (Exhibit 17)

**114.** On or about December 3, 2018, the Plaintiff Chapter went to the alleged Aristocrat Motor Co. Inc. automobile dealership to inquire about purchasing a Porsche; upon the Plaintiff's inquiry, she was told she would need a co-buyer, although no credit check was run.

**115.** Nearly 18 years after Aristocrat Motors Co. Inc. was dissolved and was no longer a car dealership with a dealer's license and the name of Aristocrat Motors had been amended to ARMOCO, Inc. during the time the company had no formation; on December 4, 2018, the Plaintiff Chapter and her allege co- buyer Defendant Michael Russaw was greeted by Defendant Stephanie Turner, who posed as an employee finance manager and Defendant Nathan Vaughan posed as the sales man for the dissolved corporations Aristocrat Motor Co. Inc. and ARMOCO, Inc. The Plaintiff Chapter picked out a vehicle she was interested in, and the Defendants Turner and Vaughan delivered to the Plaintiff and the Defendant Russaw an Aristocrat Motor Co., Inc. credit application (Exhibits 10, 10A, 10B – Aristocrat Motors Co Inc. Credit Application).

**116.** On December 4, 2018, the Defendant Stephanie Turner presented an Aristocrat Motors Co. Inc. credit application on behalf of the dissolved corporation Aristocrat Motor Co. Inc. and dissolved dealership to the Plaintiff Chapter and the Defendant Russaw, and the Defendant Turner filled out the Aristocrat Motors Co Inc. credit application in her handwriting on behalf of the Plaintiff Chapter and Russaw and instructed the Plaintiff Chapter and Russaw to execute their signature at the bottom of the credit application for the dissolved corporation Aristocrat Motors Co. Inc. to submit the dissolved entity Credit Application to obtain credit/ financing from credit/ loan lenders.

**117.** On December 4, 2018, there was a huge sign off the freeway that had a logo which stated and advertised Aristocrat Motors, which is Aristocrat Motor Co. Inc.- Firm Name as detailed in Exhibit 6;

also at the Aristocrat Motor Co. Inc. dealership is the Defendant's Porsche North America Sign and logo. (Exhibit 17)

**118.** On December 4, 2018, the Plaintiff unknowingly executed a credit application with the dissolved corporation/ dissolved dealership, Aristocrat Motor Co Inc., at the address 9400 West 65th Street, Shawnee Mission, KS 66203; and the Defendant Stephanie Turner a non-employee of Aristocrat Motors Co. Inc. processed an Aristocrat Motors Co Inc credit application on behalf the dissolved corporation Aristocrat Motors Co. Inc. and the Plaintiff Chapter.

**119.** On December 4, 2018, the Plaintiff Chapter picked out a black 2015 Porsche, from the nonexistent dealership and dissolved corporation Aristocrat Motors Co. Inc., which had no dealer's license at such time, allegedly ran the Plaintiff's Chapter credit report. (Supporting Exhibits 8, 9,10,10A,10B,11,12,13,13A,14,15,)

**120.** On December 4, 2018, the dissolved corporation Aristocrat Motor Co. Inc. (which has no formation) held itself out on the credit application agreement between the plaintiff Chapter as the originating creditor and the assignee who may purchase the credit contract. (Exhibits 10, 10A, 10B - Credit Application and Agreement).

**121.** On December 4, 2018, the Defendants Turner, and Nathan Vaughan while holding themselves out to be the employee of the dissolved corporation Aristocrat Motors Co., Inc., made the Plaintiff Chapter believe that she had obtained a car loan/financing from the dissolved corporation (a nonexistent entity) Aristocrat Motors Co. Inc. as the originating creditor and assignee of the fraudulent loan with the interest rate a whopping 24.9 percent. (Exhibit 1 Retail Installment Contract)

**122.** The credit application agreement details that Aristocrat Motors Co Inc. is the only named dealer who entered into an agreement with the Plaintiff Chapter, and the agreement states in short; The Consent applies to the dealer, who is the originating creditor in this transaction as well as any assignee who may purchase your credit contract. (Exhibit 10 Aristocrat Motor Co. Inc. Dealer Application)

<u>Aristocrat Motor Co. Inc. Credit Agreement Language</u>

> The words "we" "us" "our" as used below refer to us, the dealer, and to the financial institution(s) selected to receive your application. You understand and agree that you are applying for credit by providing the information to complete and submit this credit application... . The words "you", "your" and "yours" mean each person submitting this application. You authorize us to submit this application and another application submitted in connection with the proposed transaction to the financial institution disclosed to you by

> us the dealers ... This application will be reviewed by the dealer and such financial institutions. You agree that we may obtain a consumer credit report periodically from one or more consumer reporting agencies (credit bureaus) in connection with the proposed transaction and any update, renewal, refinancing, modification or extension of that transaction .... You agree that the dealer and the financial institution may verify your employment, pay, assets, and debts, and that anyone receiving a copy of this is authorized to provide such dealer and finance institution with such information ... You understand that we reply on the information in this credit application in making our decision. The dealer and the financial institution may monitor and record telephone calls regarding your account .... You consent to receive autodialed, prerecorded and artificial voice calls ... . The Consent applies to the dealer, who is the originating creditor in this transaction as well as any assignee who may purchase your credit contract.

**123.** The principal officers and owners of the dissolved corporation Aristocrat Motor Co. Inc., which entered into an agreement and submitted the credit application, are; Horst Schwab, Owner/President, Manfred Hetzel, Stockholder/Vice President, Edward A. Setzler, Stockholder/Secretary, Terry Buchholz, Owner/Treasurer, Ernie Tumminia, Owner/President, and Nick Allen, Owner/Vice President.(See Exhibits 2, 3, 4, 6, 7, 8, and 9.)

**124.** On December 4, 2018, the principal place of business for the dissolved corporation Aristocrat Motors Co. Inc. was not 9400 W 65th St, Merriam, KS 66203, it was 13918 Mt. Olivet Road, Smithville, Missouri 64089. (Exhibit 7)

**125.** On December 4, 2018, Defendants Santander Consumer USA Inc., Santander Consumer USA Holdings, and Chrysler Capital LLC fraudulently accepted the purported credit application (Exhibits 10,10A,10B) from the non-existent dissolved corporation Aristocrat Motors Co. Inc. and a non-existent dealership, and a retail installment contract was generated (Exhibit 1) holding the dissolved nonexistent corporation Aristocrat Motors Co. Inc. as the originators and assignees to the loan.

**126.** On December 4, 2018, the Plaintiff did not sign all the pages of the Aristocrat Motors Co. Inc. retail Installment contract, as all the pages of the retail installment contract were not presented to the Plaintiff Chapter by the dissolved corporation.

**127.** On December 4, 2018, there were numerous other issues with the alleged purchase, and all the loan documents were not presented to the Plaintiff Chapter, leaving the fraudulent loan documents incomplete without the Plaintiff Chapter Jackson's needed signature(s). (Exhibit 1 page 2 of 5)

**128.** There are two purchase agreement(s) (Exhibits 18, 19) to the allege deal; one has the name appearing on it as Aristocrat Motors as a logo only which is Aristocrat Motor Co. Inc firm name (Exhibit 6) and has no dealer's license number appearing upon either of the purchase agreements documents, or a name that specifically states who the seller or dealer is. Neither of the purchase agreements details by and between; no signature of the Plaintiff, Chapter, appears on either of the purchase agreements (Exhibits 18,19). Defendant Turner's signature appears on only one of the alleged purchase agreements (Exhibit 19), and Defendant Russaw signature appears on both purchase agreements (Exhibits 18, 19); however, one purchase agreement has no balance due and is not dated or signed by Turner or Aristocrat Motor Co. Inc retailer or Authorized Representee (Exhibit 18). There is no dealer number or automobile license number on either of the purchase agreements to specifically identify the retailer or dealer in connection with the purchase agreement to pinpoint the party who is the seller. (Exhibits 18, 19)

**129.** The credit application has a fraudulent dealer number, upon the credit application falsely indicated the Dealer number for the dissolved corporation Aristocrat Motor Co Inc. was #100613, when such dealer number is not Aristocrat Motors Co. Inc.'s dealer number and doesn't legally exist. (Exhibit 10B)

**130.** The Dealer Credit Application states clearly that the document is for Aristocrat Motor Co., Inc. USE ONLY. (Exhibit 10B)

**131.** From August 1963 to August 2000, to December 4, 2018-to the present day, Defendant Turner, and Nathan Vaughan have never held a position or employment as the financing manager for the dissolved corporations Aristocrat Motors Co. Inc. or ARMOOCO, Inc. nor did either hold a position as the finance manager or salesman's for Aristocrat Motors Co. Inc. or ARMOCO, Inc. at any time before they were dissolved (Exhibits 8,9,13,14,15), or newly incorporated, reinstated/ activated by the Plaintiff Aristocrat Motor Co. Inc. and Chapter Jackson in 2024 and by the Plaintiff ARMOCO, Inc. and Chapter Jackson in May 2025. (Exhibit 20, 20a, 20b, 20c – Reinstated Corporate Docs. of Aristocrat Motor Co. Inc. and ARMOCO, Inc .- (Exhibit 20d)

**132.** On December 4, 2018, Defendant Stephaine Turner instructed the Plaintiff Chapter to obtain a cashier's check for $16,500 and to bring said amount to her the very next day.

**133.** On December 5, 2018, the Plaintiff Chapter went to the Defendant's Central Bank of the Midwest – bank location and obtained a cashier's check for sixteen thousand, five hundred dollars; Defendants Central Bank of the Midwest made the cashier's check out to the party on the dissolved

corporation credit application Aristocrat Motor Co. Inc. firm name "Aristocrat Motors." (Exhibits 21 vs. Exhibit 6)

**134.** Although the Plaintiff Chapter and the Defendants, Central Bank of the Midwest, made the cashier's check payable to Aristocrat Motors, the Defendants Enterprise Bank & Trust and Defendants Central Bank of the Midwest allowed an entirely different entity/ corporation (Ten Investments Inc Aristocrat Motors) who's name(s) did not appear on the cahiers check ( nor were they the payee of the cashier check) to deposit and cash the cashier's check. (Exhibit 22 vs. Exhibit 21)

**135.** Although the cashier's check identifies the payee as "Aristocrat Motors"—a trade name used by Aristocrat Motor Co. Inc. (as evidenced by Exhibit 6)—and the credit application and underlying transaction were exclusively between Petitioner, Chapter and the dissolved corporation at the time Aristocrat Motor Co. Inc. (as evidenced by Exhibits 6, 8, 9, 10, 10a, 10b, 13, 13a, 14, and 15), the entity identified as "TEN Investments Aristocrat Motors"—a non-existent business entity—appears on the back of the cashier check,

**136.** Petitioner Chapter has never conducted business with T.E.N. Investments Inc., has never submitted a credit application to that entity, and has never purchased any vehicle or other goods or services from it, as clearly demonstrated by the evidentiary record.

**137.** Aristocrat Motor Co. Inc. is not, and has never been, an account holder with Enterprise Bank & Trust during the period from December 2018 to the present. Furthermore, the entity identified as "Ten Investments Aristocrat Motors," whose name appears as the payee on the reverse side of the cashier's check attached hereto as Exhibit 21, is not an account holder and has never maintained an account with Enterprise Bank & Trust. In contrast, the entity known as T.E.N. Investments Inc. is, and has been, an account holder with Enterprise Bank & Trust.

**138.** The Defendants, Enterprise Bank & Trust, allow their account holder, T.E.N. Investments Inc., to cash checks that are not made payable to T.E.N. Investments Inc. (Exhibit 21). Enterprise Bank & Trust permits T.E.N. Investments to cash checks made payable to entirely different payees that the checks were not intended for said account holder to cash. T.E.N. Investments Inc. was not the correct payee, had no rightful possession, and no entitlement to the Plaintiff's Chapter cashier's check.

**139.** Enterprise Bank & Trust and Central Bank of the Midwest failed to conduct due diligence and identity verification before allowing Ten Investments Inc. Aristocrat Motors to cash a check made payable to another payee.

**140.** Enterprise Bank & Trust allowed T.E.N. Investments to cash checks using an invalid expired D.B.A.

**141.** Enterprise Bank & Trust were legally required (under laws of the USA PATRIOT Act) to perform Know Your Customer (KYC) checks. These checks involve verifying: the legal existence of an entity (e.g., articles of incorporation or formation), the identity of individuals opening the account, verifying that the D.B.A. is current and not invalid, Tax ID numbers, addresses, and beneficial ownership. Thus, Enterprise Bank & Trust failed to make sure that T.E.N. Investments Inc. met basic legal and regulatory identity standards before allowing them to cash checks not made payable to the account holder.

**142.** Defendants Enterprise Bank & Trust gave the entity Aristocrat Motor Co Inc. Implied Recognition of Legal Capacity when it failed to reject the check and return. By entering into a banking relationship (e.g., with a corporation or LLC), the bank is recognizing that the entity and or d.b.a.: has the capacity to contract, is in "good standing" (often checked via state records), and has authorized representatives acting on its behalf. This can be used as circumstantial evidence that the entity is operating legitimately.

**143.** Enterprise Bank & Trust and Central Bank of the Midwest cashing the cashier's check gave the Defendants T.E.N. Investments Inc. sham and fraud practical legal implications; the cashing of the check gave the dissolved corporation (Aristocrat Motor Co. Inc) legitimacy of an entity's operation.

**144.** The Defendants, Enterprise Bank & Trust and Central Bank of the Midwest, converted the Plaintiff's Chapter cashier's check (Exhibit 21) when they allowed the Defendants, T.E.N. Investments Inc., specifically Ten Investments Aristocrat Motors, to cash the cashier's check and fraudulently endorsed the Plaintiff's Chapter cashier's check.

**145.** The Defendants Enterprise Bank & Trust and Central Bank of the Midwest allowed the Defendants T.E.N. Investments to cash a check on behalf of a dissolved corporation (Aristocrat Motors Co Inc.) in which T.E.N. investments Inc. were not entitled to receive, and the cashier's check was not made payable to T.E.N. Investments Inc. and the Defendants Enterprise Bank & Trust and or Central Bank of the Midwest were not entitled to grant the Defendant T.E.N. Investments the benefit of.

**146.** Enterprise Bank and Trust and Central Bank of the Midwest never gave any notice to the Plaintiff Chapter that the banks allowed the Plaintiff Chapter's cashier's check to be cashed by T.E.N. Investments Inc., which was not written out to the party cashing it.

**147.** Enterprise Bank and Trust and Central Bank of the Midwest unlawfully charged the Plaintiff Chapter account by cashing a check not payable to the presenter, T.E.N. Investments Inc., which resulted in an improper charge in violation of UCC 4-401.

**148.** Enterprise Bank and Trust and Central Bank of the Midwest converted the Plaintiff Chapter cashier's check when it allowed T.E.N. Investments Inc. to cash the cashier's check made payable to Aristocrat Motors in violation of UCC 3-420; Enterprise Bank and Trust and Central Bank of the Midwest allowed T.E.N. Investments Inc. to wrongfully take and exercise control over the Plaintiff Chapter cashier's check which was not payable to the presenter.

**149.** Enterprise Bank and Trust and Central Bank of the Midwest allowed T.E.N. Investments Inc. to cash a cashier's check made payable to only Aristocrat Motors in violation of UCC 3-404, which was a negligence contributing to alteration or unauthorized signature on the cashier's check. Enterprise Bank and Trust and Central Bank of the Midwest failed to flag the account and or shut the account down for cashing checks not made payable to T.E.N. Investments Inc.

**150.** Enterprise Bank in Trust and Central Bank of the Midwest had a Responsibility for the collection of items, such as checks, which is a violation of UCC 4-202

**151.** Enterprise Bank and Trust and Central Bank of the Midwest failed to return the cashier's check to the Plaintiff Chapter that was unlawfully cashed by T.E.N. Investments Inc., who was not the payee of the tender, and the Plaintiff never did any business with.

**152.** Enterprise Bank and Trust and Central Bank of the Midwest are in violation of UCC 4-302 – and had a responsibility to return the cashier's check to the Plaintiff Chapter. Enterprise Bank and Trust and the Central Bank of the Midwest failed to timely return an item in violation of UCC 4-302.

**153.** Enterprise Bank and Trusts and Central Bank of the Midwest are in violation of several Uniform Commercial Code provisions, as both banks allowed T.E.N. Investments Inc. to cash the Plaintiff Chapter's cashier's check that was not issued to them; the UCC placed a duty upon both banks to ensure that checks are properly payable, meaning they are authorized by the Account holder and conform to any agreement between the account holder and the bank. Enterprise Bank and Trusts and Central Bank of the Midwest allowing T.E.N. Investments Inc. account to receive a cashier's

check not payable to them violates UCC section 4-401, which states that a bank can only charge items that are properly payable.

**154.** Had the banks, Enterprise Bank and Trust, and Central Bank of the Midwest properly returned the item (cashier's check) to the Plaintiff Chapter, she would have known and been notified that an entirely different corporation (T.E.N. Investments Inc.) that she did not contract with attempted to cash her cashier's check. For Enterprise Bank and Trust and Central Bank of the Midwest violated the entity on the cashier's check legal existence when they allowed the cashier's check to be cashed and never notified the Plaintiff Chapter of any fraud that may have occurred on the account.

**155.** The cashier's check has a forgery on the back of the cashier's check of an endorsement signature from a signature that is not from a representative of Aristocrat Motor Co Inc., Enterprise Bank and Trust and Central Bank of the Midwest failed to recognize the forgery on the back of the cashier's check (Exhibit 21); the Defendants Enterprise Bank and Trust and Central Bank of the Midwest had a duty to verify the authenticity of checks which takes precedence; said defendants failed to verify the authenticity of the signature on the cashier's check and account holder payee matched the name on the account holder; the said banks failed to dishonor the cashier's check based upon fraud in violation of UCC 4-402.

**156.** Aristocrat Motors Co., Inc. did not hold a dealer's license number on December 4, 2018.

**157.** Aristocrat Motor Co. Inc. was newly incorporated/ reinstated by the Plaintiffs Aristocrat Motor Co. Inc. and Chapter in late 2024, and upon information and belief, Enterprise Bank and Trust have unlawfully allowed checks made out to said Plaintiffs corporation and or Aristocrat Motors trade or fictious business name also owned by the Plaintiff Aristocrat Motor Co. Inc. Chapter, and or Snowy Owl LLC to be cashed by T.E.N. Investments Inc. into their entity business account. (See: Exhibits 20,20a,20b,20c,22,23)

**158.** Upon information and belief, therefore, asserted; during the time Aristocrat Motor Co. Inc. was dissolved from 2000 -2024 as a corporation, Enterprise Bank and Trust allowed T.E.N. Investments Inc. to deposit and cash countless amounts of checks; which resulted from consumers filling out a Aristocrat Motor Co. Inc. credit application and obtaining a cashier's check made payable to Aristocrat Motor Co. Inc firm name Aristocrat Motors- (Exhibit 6). Enterprise Bank and Trust allowed T.E.N. Investments Inc. to make payments that were made from transactions (and benefits) done under the name of the dissolved corporation, Aristocrat Motors Co. Inc.

**159.** In 2004, T.E.N. Investments Inc. opened its bank account with Enterprise Bank and Trust in Clayton, Missouri. Upon T.E.N. Investments Inc. opening the account, on September 24, 2004, it obtained a Registration of a fictitious business name from the Missouri Secretary of State on behalf of T.E.N. Investments Inc. At some point, T.E.N. Investments Inc. presented to Enterprise Bank and Trust a registration of fictitious business name, detailing that T.E.N. Investments Inc. is doing business as Aristocrat Motors (Exhibit 24) and Aristocrat Motor Company (Exhibit 27 and 28) however, on November 24, 2009, the Missouri Secretary of State sent T.E.N. Investments Inc. a notice of expiration for the fictitious name registration for both fictitious names they were using Aristocrat Motors and Aristocrat Motors Company (Exhibit 25). T.E.N. Investments Inc. mimicked the dissolved corporation Aristocrat Motor Co. Inc.'s name (Exhibit 8,9,10, 10a,10b, 13,13a,14,15) to cash the checks from consumers who filed out the Aristocrat Motor Co. Inc. credit applications. Therefore from November 24, 2009 thought-out the year of 2018 the Plaintiff Chapter cashier's check ( Exhibit 21) was deposited into T.E.N. investments Inc account there was no valid fictious name registration declaring T.E.N. Investments Inc. to be doing business as Aristocrat Motors or Aristocrat Motors Company; not forgetting the fact that Plaintiff Chapter credit application (Exhibits 10, 10a, 10b) is not with the entity T.E.N. Investments Inc. whatsoever it is entirely with Aristocrat Motor Co Inc. T.E.N. Investments Inc. stole the Plaintiff Chapter cashier's check and cashed into their bank account with the Defendants Enterprise Bank and Trust which said bank allowed.

**160.** The alleged Dealer/ license number for Aristocrat Motor Co Inc. is purportedly #100613 and is not a Dealer or license number given to them by the Defendant's Department of Revenue Division of Vehicles.

**161.** The Dealer number that appears on the Aristocrat Motors Co. Inc. credit application on page 3 (Exhibit 10b) is #100613.

**162.** The entity/ Defendants T.E.N. Investments Inc. doesn't have a dealer license with the Defendant's Kansas Department of Revenue. The specific name that appears on the Dealer's License is TEN INVESTMENTS INC ARISTOCRAT MOTORS, the same name that appears on the Plaintiff's chapter cashier's check (Exhibit 21), with said dealer number/ dealer license being D-0250. (Exhibit 29). T.E.N. Investments Inc. is the proper legal name of the entity as detailed in Missouri Secretary of State Annual Registration Reports (Exhibits 26, 30, 30a, 30b, 30c, 30d, 30e, 30f). There is no such entity by the legal name that appears on the Defendant's Department of Revenue Division of Vehicle License for the correct legal that of the entity is T.E.N. Investments Inc. (Exhibit 30), not Ten Investments Inc., Aristocrat Motors. This description confuses and misrepresents facts to the public.

**163.** Ten Investments Inc, Aristocrat Motors dealer number/ license number D-0250 doesn't appear anywhere on the dissolved corporation Aristocrat Motors Co. Inc. credit application (Exhibit 10, 10a, 10b).

**164.** There is no auto dealership dealer number or dealer license number in the state of Kansas or Missouri with the dealer number (100613), said number appears throughout the fraudulent loan documents; evident and located at the top of the page of Exhibits 10b, 11, 12. The dealer number doesn’t appear on the handwritten credit application on Exhibit 31, nor does the dealer number appear on the retail installment contract, page 1, as evident in Exhibit 1.

**165.** Aristocrat Motor Co. Inc. (Exhibits 2, 7,6) is not T.E.N. Investments Inc. (Exhibits 30- 30a-30F) or Ten Investments Inc. Aristocrat Motors; these are three entirely different corporations/entities with different officers. Accordingly, on March 24, 2000, Aristocrat Motor Co. Inc. filed its last Annual Registration Report in 2000. (Exhibit 7) The Defendant Horst Schwab was Aristocrat Motors Co. Inc. president, and Defendant Manfred Hetzel was Aristocrat Motor Co. Inc. vice president, Defendant Terry Buchholtz was Aristocrat Motor Co. Inc. treasurer, and Defendant Edward Setzler was Aristocrat Motor Co. Inc. secretary and as of 2000 the principal place of business for Aristocrat Motor Co. Inc. was 13918 Mt. Olivet Road Smithville, Mo 64089. (Exhibit 7) T.E.N. Investments Inc. is an entirely different entity and has an entirely different set of principles (Exhibits 30- 30a-30F). In 2018 according to the Missouri Secretary of State Defendant Marion Battaglia -is the president of T.E.N. Investments Inc, Defendant Frank Bryant was the Secretary, Defendant Kevin Killiea was the vice president, Defendant Angela Lewitzke was the assistant Secretary, Defendant Anthony Soave was set on the board of directors, Defendant Michael Piesko set on the board, and Defendant Yale Levin set on the board. In 2019, the defendant Rick Brockhaus set held himself out as a treasurer and or equivalent of T.E.N. Investments Inc. as well as the other defendants, and the names continued to be repeated throughout the years of 2019-2025 (Exhibit 30-30a-30F))

**166.** The dealer's name or corporation name on the credit application is "Aristocrat Motor Co Inc." not T.E.N. Investments Inc. (Exhibit 10, 10a, 10b)

**167.** On December 4, 2018, Aristocrat Motor Co. Inc. did not hold a d.b.a. with any state, alleging to be doing business as Aristocrat Motors.

**168.** On May 10, 2000, the defendants Schwab and Setzler filed a certificate of amendment with the Kansas Secretary of State amending the name of Aristocrat Motor Co. Inc. to ARMOCO, Inc. (Exhibit 8), then dissolving the corporation ARMOCO on July 31, 2000 (Exhibit 9, 14,15). Therefore,

there was no way for Aristocrat Motor Co. Inc. to have obligated the Plaintiff Chapter to a loan obligation or to have purportedly submitted Aristocrat Motor Co Inc credit application Exhibits (10, 10a, 10b) to lenders or for the dissolved corporation to have assigned said loan to the Defendants Santander Consumer USA INC, based on the facts 1.) Aristocrat Motor Co. Inc. has been a dissolved corporation from 2000-2024 evident by Exhibits 13, 13a, 20a-20c; during the time of the origination of the purported loan, and 2.) before Aristocrat Motor Co. Inc. was dissolved the name had changed to ARMOCO, Inc. and the Plaintiff Chapter never filled out a credit application with ARMOCO, Inc. Nor does either dissolved entities ARMOCO, Inc., or Aristocrat Motor Co. Inc. have or had a dealers automobile license on December 4, 2018, to conduct business as a dealer or submit the credit application to lenders.

**169.** There are two retail installment contracts. (Exhibits 1 and 32) Exhibit 1, page 5, is not assigned to any lender. Exhibit 32, page 5 of 5 – the retail installment contract is assigned to a lender, Defendant Chrysler Capital.

**170.** On or about December 2018, Angela Lewitzke fraudulently held herself out to be Aristocrat Motor Co. Inc.'s controller. Angela Lewitzke executed her signature on the Aristocrat Motor Co. Inc. retail installment contract page 5 of 5, fraudulently misrepresenting herself as the controller of Aristocrat Motor Co. Inc. She then purportedly assigned the retail installment contract (Exhibit 32 bottom of page 5 of 5) over to Chrysler Capital aka Santander Consumer USA Inc., Santander Consumer Holdings as the representee for the seller as controller of said dissolved company. The Retail Installment document in which Defendant Lewitzke executed was an Arbitration Provision document which detailed the terms and stated: "Any claims or disputes whether in contract, tort or otherwise ( including the interpretation and scope of this Arbitration Provision and the arbitration of the claim or dispute) between you and us or our employee agents, successors or assigns, which arises out of or relates to your credit application"….. (Exhibit 32 page 5 of 5) The credit application (Exhibit 10) refers to "Aristocrat Motor Co. Inc." as the dealer only, a dissolved corporation (Exhibit 13, 13a). Defendant Angela Lewitzke was not employed by (the corporation that was not only dissolved but also changed its name to ARMOCO, Inc.- Exhibits 8,9) Aristocrat Motor Co. Inc. at the time she executed the retail installment contract and allegedly assigned the contract over to Chrysler Capital. The retail installment (executed by Lewitzke) assignment was fraudulent. Said defendant fraudulently assigned the retail installment contract to Santander Consumer USA, Inc, Chrysler Capital Group LLC, and Santander Consumer Holdings Inc. on behalf of a dissolved unincorporated entity.

**171.** Defendant Angela Lewitzke has never held a position, let alone a position as a secretary or controller with the dissolved corporation Aristocrat Motor Co. Inc and or ARMOCO, Inc. The credit application (Exhibit 10, 10a, 10b) purportedly generated the retail installment contract (Exhibit 1, 32). According to the last filed Annual Registration Report of Aristocrat Motor Co. Inc. secretary who held the power to assign the retail installment contract if the corporation was incorporated would have been one of the officers of Aristocrat Motor Co. Inc. and or ARMOCO, Inc. either of the Defendants Edward Setzler, Horst Schwab, Edward Setzler, Manfred Hetzel, or Terry Bucholtz (Exhibit 2,7,9).

**172.** Defendant Lewitzke holds the position as Secretary and or Assistant Secretary for the following corporations:

- ARM PO, Inc. (Exhibit 33) with its principal place of business/ headquarters located at the same place of business as Aristocrat Motor Co. Inc. (Evident by Exhibit 2,3, 4,5,6,7) -9400 W 65th Street Merriam, KS 66203 and or

- T.E.N. Investments Inc. (Exhibits 26, 34, 30, 30a, 30b, 30c, 30D,) with its principal place of business/ headquarters located at the same place of business as Aristocrat Motor Co. Inc. (Evident by Exhibit 2,3, 4,5,6,7) -9400 W 65th Street Merriam, KS 66203 and or 9400 W 65th Street Shawnee Kansas 66203 (which is the same location)

- Soave Automotive Group, Inc. (Exhibits 35) with its principal place of business/ headquarters located at 13851 Madison Ave, Kansas City, MO 64145.

- KCMER Investments, Inc., (Exhibit 36) with its principal place of business and headquarters located at the same address as Soave Automotive Group, Inc., place of business 13851 Madison Ave, Kansas City, MO 64145; additionally, on February 14, 2025 KCMER Investments, Inc. just recently filed for a registration of fictitious Name with the state of Missouri asserting they are doing business as "ARISTOCRAT MOTORS" at the business address 13851 Madison Ave KCMO 64145. (Exhibit 37) Although on November 7, 2024, the Plaintiff Snowy Owl (Exhibit 23) obtained a registration of fictitious business name for the same business name ARISTOCRAT MOTORS, which is currently doing business in the state of Missouri under the <u>same</u> registration of fictitious business name.

**173.** On December 4, 2018, Defendant Turner fraudulently signed the Aristocrat Motor Co. Inc. retail installment contract as the Finance Manager when she did not work for the dissolved (Exhibits 13, 13a,) corporation (Aristocrat Motor Co. Inc.) which had changed its name (Exhibits 8, 9, ) to ARMOCO, Inc. before dissolving the corporation in Kansas ( Exhibits 9,14,15) and was never

employed by Aristocrat Motor Co. Inc. to execute the contract on behalf of Aristocrat Motor Co. Inc. (Exhibits 1, 32 - bottom of page 5 of 5)

**174.** On December 7, 2018, the Defendants, Dealtrack, Anthony McCoy, posing as a credit buyer (and assignees of Aristocrat Motor Co. Inc. auto loan) working on behalf of Chrysler Capital, Chrysler Capital Group LLC, generated a fraudulent Chrysler Capital Application Status report, fraudulently holding the non-existent dissolved corporation "Aristocrat Motors Co. Inc." out as the dealer. (Exhibit 11) The Chrysler Capital Application Status Report has the dissolved corporation name ("Aristocrat Motors Co. Inc.") appearing at the top of the page; a VIN Number does not appear on the Chrysler Capital application status; the fraudulent dealer number of the non-existent dealership and non-existent corporation appears on the document for "Aristocrat Motors Co. Inc appears also a the allege dealer number appears 100613 on the document top of page. (Exhibit 11) The Chrysler Capital fraudulent application status documents make false and misleading statements (regarding the non-existent loan) at the bottom of the page states quote " "The Dealer is responsible for confirming all incentivized programs terms and eligibility requirements thru the incentive configurator on Chrysler DealerCONNECT".

**175.** On or about January 9, 2019, Defendants Mercedes Benz Financial, Dealtrack Technologies, Turner, Chrysler Group LLC Services, generated a fraudulent document and delivered such document to the dissolved corporation Aristocrat Motor Co Inc., the document is entitled - Chrysler Capital Contract Status Report regarding the fraudulent loan and Plaintiff Chapter (Exhibit 12); The Chrysler Capital Contract Status report document attached details that the lender ID was 33515 and the dissolved, nonexistent corporation " Aristocrat Motors Co. Inc."(and their alleged dealer number 100613) name appears at the top of the page from funding analyst which states: DEALER -*** 24 HOUR NOTICE TO RETURN *** 1. Need title application to be signed by dealer, 2. Need approval on 295.000 expiration fee 3. Need proof of down payment 4 Need Bookout This application has been reviewed and is subject to final structure review and return if the stipulations are not met.

**176.** On or about December 4, 2018, the Defendant, Russaw, executed an agreement to provide accidental physical damage insurance. On an unknown date, Turner executed an Agreement to Provide Accidental Physical Damage insurance; upon the document, Turner holds herself out to be the dealer and salesperson; the number 135587 appears on the right corner of the document. (Exhibit 39) The Defendant Mercedes Benz Finserv USA LLC, holds itself out to be the bank for the 2015 Porsche; Defendant Gecio Insurance holds itself out to be the insurance for the bank Mercedes Benz Finserv USA LLC, purporting to insure the 2015 Porsche Cayenne, falsely stating that the Gecio policy

contains loss payable endorsement in favor of the bank Mercedes Benz Finserv USA LLC. The insurance policy number used for the Mercedes Benz Finserv USA LLC was the Plaintiff Christopher Jackson and Chapter Jackson insurance policy, which was for an entirely different 2004 Porsche, which the Defendant Santander Consumer USA Inc. financed. The Plaintiff Chapter or the Plaintiff Christopher, never did any business with Mercedes Benz Finserv USA LLC, and never obtained a loan from said company or applied for credit for any type of loan from the alleged Mercedes Benz Finserv USA LLC, bank. Russaw states on the agreement that he authorized the bank Mercedes Benz Finserv USA LLC, to disclose the Plaintiffs Christopher Jackson and Chapter Jackson's insurance information; the insurance policy 4548871559 with the Defendants Geico was never the Defendant's Russaws insurance policy. Defendant Geico misrepresented itself to be the insurer for Russaw, the vehicle and insurance carrier for the bank, Mercedes Benz Finserv USA LLC.

**177.** The dealer's name on the credit application is left blank. (Exhibit 31) The dealer's number on the credit application is left blank. The year, model, and miles, MSRP, terms in months, mileage program, the cash down payment, the amount financed, and the credit application areas, such as prior employment, are left blank. The handwriting on the credit application is that of Defendant Turner and not Defendant Russaw or the Plaintiff Chapter. The credit application is for financing a leased vehicle, not a vehicle purchase. At the bottom of the incomplete credit report that has no dealer name such space is left blank in tiny print, it states quote: Credit Report " A credit may be obtained in connection with this application for a renewal or extension of credit for which applicant was made upon request I will be told if a credit report was /were obtained and given the name and address of the credit reporting agency providing the reports credit investigation <u>I authorized the dealer financial services to investigate my credit</u> and employment history based on the information voluntarily provided to me which is true and correct <u>fair credit reporting act disclosure this applicant may be considered by financial services in the dealer</u> as to whether it meets purchase or lease requirement"

**178.** The Credit Application has the dissolved non-existent corporation and Dealer Name at the top of the page, "Aristocrat Motor Co. Inc.". The Defendant Russaw, and the Plaintiff executed the credit application. On page <u>two</u> of the credit application, it also has the non-existent corporation and non-existent Dealer Name as Aristocrat Motor Co. Inc. It also states on page two that the dealer informed the Plaintiff of the financing sources in which the application will be sent. Page three of the credit application has a dealer selection which states at the top that the document is for THE dissolved corporation and non-existent dealership Aristocrat Motor Co Inc USE ONLY. (Exhibit 10, 10b); Although on December 14, 2018, Chrysler Capital sent an entirely different entity/ corporation (that

the Plaintiff Chapter never applied for credit with nor filled out a credit application with), TEN INVESTMENTS, a returned Contract Package for the Application ID 106194276. (Exhibit 40 compare to Exhibit 1, page 2 of 5). On the document entitled Return Contract Package From Chrysler Capital, it states in short quote:

Dear TEN INVESTMENTS INC.

We have reviewed the enclosed contract package for Michael Russaw and are returning it due to the following reason(s):

- Contract Signature Missing
- Contract Signature Missing

**179.** The Application ID number 106194276 that appears on the letter (Return Contract Package from Chrysler Capital -Exhibit 40) addressed to TEN INVESTMENTS INC. ID number 106194276 also appears on the Chrysler Capital Application Status report document (Exhibit 12) which is directed to an entirely different dissolved entity, "Aristocrat Motor Co. Inc." At the top of the Chrysler Capital Application Status report Aristocrat Motor Co. Inc. (Exhibit 12) name appears at the top of the page and a bar code at the very top appears with the same numbers 106194276RKS appearing on the Ten Investments Inc. document from Chrysler Capital – Return Package (See and compare the numbers detailed on Exhibit 40 with Exhibit 11, and Exhibit 12) This example details there was two entirely different entities one which the Plaintiff Chapter executed a credit application with (Exhibits 10, 10a, 10b) (Aristocrat Motor Co. Inc – dissolved- evident by exhibits 8, 9, 13, 13a, 14,15) and T.E.N. Investments Inc. an entity; the Plaintiff Chapter never executed a credit application with in order for T.E.N. Investments Inc. to be the original creditor. These details are crucial evidence of identity fraud, misrepresentations, fraudulent concealment, and identity theft. (among others)

**180.** From November 24, 2009, through the present day, T.E.N. Investments Inc. has never obtained a registration of a fictitious business name for Aristocrat Motors.

**181.** With all the above events occurring, the Plaintiff Chapter never received a title or registration to register the vehicle and never was able to use the vehicle, and began making payments directly Santander Consumer USA Inc, and or its sister companies for the amount of $ 811.23 per month from January 2019 thru the time she discovered a small portion of the defendant's fraud in deceit; the Plaintiff Chapter stop making payments in August 2021 to Defendant Santander Consumer USA Inc. ( Exhibits 41- Vehicle Payments)

**182.** From 2019-2021, the Plaintiff Chapter was without mobility and did not have a functional vehicle to drive. During that time, she was without a vehicle; she paid the alleged car note and paid for car insurance to the Defendants, Geico, for the Porsche.

**183.** During the time the Plaintiff Chapter was without a vehicle in 2019, she suffered from a miscarriage of her child caused by the negligence of the Defendants; because the Plaintiff Chapter was without a vehicle, she was not able to obtain additional medical care to prevent the miscarriage; Defendants caused the wrongful death of the Plaintiff Chapter unborn child.

**184.** During the time Chapter paid the car note each month, because of the issues detailed herein, she was unable to drive the vehicle and get to and from her mailbox to obtain mail from a California court case. The plaintiff Chapter obtained a default judgment for $1,063,800.42 in 2019 because the Plaintiff had no mobility to get to and from, was without a title to obtain tags, and was without a vehicle that was registered to drive legally on the roads.

**185.** The Defendant Russaw never made one payment; the Plaintiff Chapter made all the payments and the down payment for the fraudulent loan.

**186.** During the time the Plaintiff Chapter was making payments for the alleged vehicle and paying the insurance on the Geico Insurance from 2019-2021, the Defendants Ronald G. Meyer, Kraft Tool Company, Marilyn Meyer and Kraft Tool continued to hold themselves out as the only vehicle owner of the Porsche that Aristocrat Motor Co. Inc allege to had sold to the Plaintiff Chapter. Even as of August 2021, Kraft Tool filed with the Kansas Department of Motor Vehicles (KDOR) affidavits asserting under oath to be the owner of the Porsche. For Example, Kraft Tool Alleged Under Oath and on official documents to be the only owner of the Porsche from 2015- 2021

➢ From 2015 through 2021, CarMax has Kraft Tool as the Owner of the vehicle. The Car Fax report details that the vehicle has only had one owner, Kraft Tool and said vehicle was sold by the dissolved company Aristocrat Motor Co. Inc. in 2015 (Exhibit 16)

➢ On July 30, 2015, the Certificate of Title states: Owner Name Kraft Tool (Exhibit 41)

➢ On October 24, 2017, Defendants Kraft Tool Co., Kraft Tool, Donald G. Meyer aka Ronald G. Meyer filed with KDOR an Affidavit of Correction stating that he had signed, in addition to signing his business name on the back of the title, in error and Donald G. Meyer aka Ronald G. Meyer also executed a Kansas Power of Attorney to " Aristocrat Motors" granting them the purported power to transfer the title of the vehicle (Exhibits 42, 42a.)

- On February 20, 2019, Kraft Tool purported that the vehicle had 18 actual miles and that Kraft Tool was the owner of the Porsche. (Exhibit 43,) However, the vehicle was not in Kraft Tool possession at the time / Ron Meyer, Ronald G. Meyer, Donald G. Meyer applied for the duplicate title with the Department of Motor Vehicles for him to assert the mileage of the vehicle, such time the vehicle was in the Plaintiff Chapter's possession. According to the retail installment contract (Exhibit 1), there were not 18 miles on the vehicle; it was allegedly 57,272 miles on the vehicle as recorded by the Retail Installment Contract. And according to the Chrysler Capital Application Status report (Exhibit 12) the vehicle had 56,000 miles, and additionally, according to the Aristocrat Motor Co. Inc. dealer credit application, the vehicle had 56000 miles (Exhibit 10b), which was generated on December 4, 2018.

- On February 20, 2019, Kraft Tool, Kayce Jones, purported that the vehicle had no lien holders, and that Kraft Tool (Donald G. Meyer) was the owner of the Porsche. (Exhibit 44) Although the Plaintiff was paying a car note for the same vehicle in the month of February 201,7 to an alleged lienholder, Santander Consumer USA Inc. for the same vehicle, Ronald G. Meyer, Kraft Tool Co., Kraft Tool stated had no lien holders.

- Although the retail installment contract purports to have sold the vehicle to the Plaintiff Chapter on December 4, 2018 (Evidence by Exhibits 1,21, 18, 19, 32,) On February 20, 2019, Defendants Kayce Jones, Ronald G. Meyer aka Donald G. Meyer, Kraft Tool, and Kraft Tool Company allege that Kraft Tool was the registered owner of the vehicle on a Kansas Department of Revenue Manual Title Application and upon a Kansas Department of Revu7ne power of Attorney. (Exhibits 44, 45)

- Although the Plaitniff Chapter had been making the car payment from 2019 until August 2021. In August 2021, the Defendant Kraft Tool, Ronald G. Meyer, Kraft Tool Company, and Marilyn Meyer, held Kraft Tool out to be the owner of the Porsche and applied for a duplicate title, and stated on the application for the duplicate title that the actual miles of the Porsche was 18 and that there was no lien holders (Title No. AB1378637) (Exhibits 46, 16)

- On or about August 2021, Defendant Kraft Tool Company owner Ronald G. Meyer told the office of the District Attorney, law enforcement/ consumer fraud investigator Tivol Lewis, on a recorded line that someone had forged his name on the Porsche title documents.

- On October 12, 2023, Defendant Ron Meyer, aka Ronald G. Meyer, aka Donald G. Meyer, executed an Affidavit (Exhibits 47, 47a, 47b, 47c) and stated in short:

A. That through his company Kraft Tool Co., he purchased the vehicle (in new condition) from the Aristocrat Motors dealership in Merriam, KS (hereinafter the dealership), in 2015.

B. That he sold the Vehicle back to the dealership in 2017

C. At the time he sold the vehicle back to the Dealership, he signed his name as part of a power of attorney assignment to the Dealership at least two times. And he attached Exhibits G1 and G2 to his affidavit – (See Exhibit 47B, 47C)

D. At the time he sold the vehicle back to the dealership, he viewed the sale as final, and neither he or Kraft Tool Co. had any continuing expectations of ownership of the vehicle. – This statement is false and perjury for Kraft Tool Co. did apply for a duplicative time in August 2021, and the duplicate title (AB1378637) was mailed from the Kansas Department of Motor Vehicles to Kraft Tool, 3100 W. 118th Street, Leawood, KS 66211 USA. (Exhibit 46, 16)

**187.** Upon the Plaintiff Chapter discovery of the fraud to the existence of the title in August 2021, she stopped paying on the fraudulent loan. Chrysler Capital Group LLC, Santander Consumer USA Inc., and Santander Consumer Holdings began to make collection calls upon said Plaintiff and sent the Plaintiff notices alleging the Plaintiff was behind in payments.

**188.** On or about January 9, 2019, Defendants Santander Consumer USA Inc., Chrysler Capital Group LLC filed with the Missouri Department of Revenue a Missouri Department of Revenue Notice of Lien Application, acting as the lien holder of the Porsche, and classified the lien as Bank/Savings and Loans. (Exhibit 47)

**189.** Cynthia L. Bishop, an individual and former employee and notary public for T.E.N. Investments Inc., a Missouri corporation, is alleged to have notarized a government-issued document contained within the deal jacket for the subject vehicle, purporting to be executed by an individual named Donald G. Meyer. Upon information and belief, Donald G. Meyer is a fictitious or nonexistent individual, and no such person appeared before Ms. Bishop to execute or affirm the document under oath. Nonetheless, Ms. Bishop attested that Mr. Meyer appeared in her presence to notarize the document, including affirmations regarding the facts and mileage of the vehicle, constituting a false notarization in violation of applicable notarial and legal standards.

**190.** From January 2019 to 2021, the Plaintiff Chapter sent vehicle payments by wire and by mail to the Defendants Santander Consumer USA Inc/ Chrysler Capital Group LLC, Santander Consumer Holdings, Santander Holding USA, Inc., Banco Santander, S.A. (Global Banking group), Santander

Bank, N.A., Santander Securities LLC, Santander US Capital Markets LLC, Santander Investments Services, Santander Consumer USA Holdings Inc., FCA US LLC, Stellantis LLC, Stellantis Financial Services US, Chrysler Capital LLC; (Exhibit 48- payments)

**191.** During the years of 2019 – 2021, the Defendants Santander Consumer USA Inc/ Chrysler Capital Group LLC, Santander Consumer Holdings, Santander Holding USA, Inc., Banco Santander, S.A. (Global Banking group), Santander Bank, N.A., Santander Securities LLC, Santander US Capital Markets LLC, Santander Investments Services, Santander Consumer USA Holdings Inc., FCA US LLC, Stellantis LLC, Stellantis Financial Services US, Chrysler Capital LLC; called and unlawfully recorded the Plaintiff Chapter over the telephone as the lienholders and demanded payment from the Plaintiff Chapter; and sent the Plaintiff Chapter bills by mail naming her solely in many of the bills as the only party named on the bill.

**192.** On or about August 2021 the Plaintiff Chapter Jackson began to make Consumer Complaints with the defendants Porsche North America, Santander Consumer USA Inc, Santander Consumer USA Inc/ Chrysler Capital Group LLC, Santander Consumer Holdings, Santander Holding USA, Inc., Banco Santander, S.A. (Global Banking group), Santander Bank, N.A., Santander Securities LLC, Santander US Capital Markets LLC, Santander Investments Services, Santander Consumer USA Holdings Inc., FCA US LLC, Stellantis LLC, Stellantis Financial Services US, Chrysler Capital LLC; KDOR, Kansas District Attorney Office, Consumer Protection Burau, Experian, Experian Information Solutions Inc., Equifax, Soave Enterprises L.L.C, Titan International, Inc., TransUnion. State of Kansas Office of the Attorney General, Consumer Protection and Antitrust Division.

**193.** The Plaintiff Chapter began demanding her money back (by email) from the Defendants Porsche North America, Stephanie Anne Turner aka Stephanie Gador, Robert Hellweg, Kayce Jones, Santander Consumer USA Inc, Santander Consumer USA Inc/ Chrysler Capital Group LLC, Santander Consumer Holdings, Santander Holding USA, Inc., Banco Santander, S.A. (Global Banking group), Santander Bank, N.A., Santander Securities LLC, Santander US Capital Markets LLC, Santander Investments Services, Santander Consumer USA Holdings Inc., FCA US LLC, Stellantis LLC, Stellantis Financial Services US, Chrysler Capital LLC; Marilyn Meyer, Ron Meyer, Ronald Meyer, Donald G. Meyer, Nathan Vaughan, Kayce Jones, Hellweg, Ryan Meyer, Marion Battaglia, Soave Automotive Group LLC, Kevin Killiea, Kraft Tool Company, Jordan Kivett, and rescinded her signature based on fraud, and placed the Defendants on notice of fraud. (Exhibits 54,55,56,57,58)

***Consumer Reports/ Fraud Reports Made and Ignored:***

**194.** On or about August 2021, the Plaintiff made consumer reports to the Defendant's Office of District Attorney, Tivol Lewis, Kansas Consumer Fraud Division, regarding consumer fraud, bank fraud, identity theft, and loan fraud. (Exhibit 49, 50)

**195.** The Defendants, Tivol Lewis, Emilie Burdette, Stephen M. Howe, Kansas Consumer Fraud Division, State of Kansas Office of District Attorney failed to properly investigate and closed the case, and did not write up any of the Defendants for any wrongdoing; the defendants were negligent and failed to properly determine that the name on the credit application was the proper party to the dispute. The Defendants failed to issue the Subpoena Duces Tecum to the proper party of the contractual agreement "Aristocrat Motor Co Inc." or any of its officers of the dissolved entity. The documents that the Defendants obtained from Marion Battaglia and other documents were never shared with the Plaintiff during the investigation in which the Defendants obtained the subpoena issued.

**196.** The Defendants Tivol Lewis, Emilie Burdette, Stephen M. Howe, Kansas Consumer Fraud Division, State of Kansas Office of District Attorney issued the subpoena to Aristocrat Motors, although there is no such entity, and brought it to the attention of Marion Battaglia, alleging him to be the President, although Marion Battaglia is not the president of a company called Aristocrat Motors. (Exhibit 51, 52) The Defendants failed to determine that the company regarding Chapter complaint was a dissolved entity that had no dealer's license and was a dissolved corporation. The Defendants' handling of the disputes violates the Fair Credit Reporting Act (FCRA) and the Consumer Financial Protection Act. Defendants conducted a sham investigation. The Defendants did not take sufficient steps to intake, process, investigate Chapter disputes, and notify the public and other consumers about consumer disputes, resulting in the inclusion of incorrect information. The Defendants conducted sham investigations rather than properly reviewing the disputes as required by federal law. The Defendants' failure to properly investigate the Plaintiff's Chapter complaints has led to errors, to serious consequences for Chapter finances and credit. Defendants herein in this section routinely and uncritically accept the original furnisher's response to the disputed information, even when that response was improbable or illogical on its face and failed to share the documents supplied by the allege dealership company with the Plaintiff, or when Chapter had other information available that suggests the furnisher is unreliable or untruthful defendants were negligent and failed to consider- and ultimately investigated the wrong entity and contractual party to the loan – which led the Plaintiff Chapter to sue the wrong entity and party and based her claims upon the wrong entity and party on the

bases of the sham investigation which was conducted. The Defendants should have issued the subpoena to Aristocrat Motor Co. Inc. because the Plaintiff did not conduct any business with Marion Battaglia, who is not an officer or president of Aristocrat Motor Co. Inc. whom the Plaintiff Chapter executed a dealer credit application with. (Exhibits 10,2)

**197.** Marion Battaglia is not the present president of Aristocrat Motors and unlawfully holds himself out to be the president of a non-existent entity to throw the investigation off and to mislead and misrepresent facts in order for the plaintiff Chapter to seek redress from the wrong party. Marion Battaglia is not the president of an entity by the name of Aristocrat Motor; there is no such entity by said name. Marion Battaglia is the president of the following corporation

**198.** T.E.N. Investments Inc., the same corporation in that cashed the Plaintiff's cashier's check, (Exhibit 21) although the Plaintiff's Chapter never filed out a dealer application with T.E.N. Investments Inc; Marion Battaglia is the president for T.E.N. Investments Inc. (Exhibits 26,30, 30a, 30b,30c,30d, 30f, 30e,). Aristocrat Motor Co Inc. is the only dissolved corporation in which the Plaintiff Chapter conducted business (Evidence by Exhibits 10, 10a, 10b, 11,12, vs. 2,3,4,5,6,7,8,9,13,13a,14,15,). Marion Battaglia and or T.E.N. Investments should have never had the Plaintiff's Chapter loan documents to turn over to the investigator for the investigation, for she never conducted business with them or applied for credit or purchased a vehicle from T.E.N. Investments Inc. The Defendants Battaglia among other Defendants unlawfully obtained the Plaintiff's Chapter social security number and private information and stole the Plaintiff's identity and obligated the Plaintiff to an auto loan with T.E.N. Investments Inc, although the credit application clearly states the dealer's name is Aristocrat Motor Co. Inc. not T.E.N. Investments Inc. (Exhibits 2, 10,10a, 10b, 11, 12).

**199.** On October 16, 2023, Marion Battaglia stated under oath as follows: (See: Marion Battaglia Affidavit notarized by Defendant Lewitzke - Exhibit 61)

- That he is duly sworn upon oath, and states upon personal knowledge on behalf of himself and on behalf of Soave Automotive Group, Inc. that he is currently the president of Soave Automotive Group, Inc.
- He understands the litigation involves a 2015 Porsche Cayenne VIN. No. WP1aB2A26FLA59974

➢ T.E.N. Investments Inc. does business as 'Aristocrat Motors" at its Porsche dealership located at 9415 W 65th St., Merriam, KS 66203 (the dealership)

➢ T.E.N. Investments, Inc. operates the Dealership and sold the Vehicle to Chapter Jackson and Michael Russaw.

➢ Any actions taken by me with respect to the vehicle to the extent that they were taken at all were taken in my capacity as an agent of T.E.N. Investment Inc. and not in my personal capacity said above statements by Marion Battaglia are perjury and false statements under oath. Facts: The Plaintiff Chapter never purchased a car or applied for credit with the alleged dealership T.E.N. Investments Inc. but applied for credit with the dissolved corporation Aristocrat Motor Co. Inc. (Aristocrat Motor Co. Inc. Corporation Dissolved Evidence by - Exhibits 8,9, 13, 13a, 14,15. Chapter applied for credit only with Aristocrat Motor Co. Inc. a dissolved entity not Battaglia or T.E.N. Investments Inc. evidenced by (Exhibits 2, 10,10a, 10b, 11, 12)

**200.** On or about January 6, 2022, the Defendants Tivol Lewis, Emilie Burdette, Stephen M. Howe, Kansas Consumer Fraud Division, State of Kansas Office of District Attorney closed the Plaintiff Consumer Fraud case and did not charge any one for any investigation fees, did not seek any legal actions or write up anyone for any civil penalties as it relates to the information the Plaintiff Chapter brought to their attention; there was no judgment entered against any parties and no findings of determined or declared to be unconscionable acts, practices, or violation of KCPA as provided by K.S.A. 50-632(a)(1). (Exhibits 59, 60)

**201.** On or about August 2021, the Plaintiff Chapter made a consumer report to the Defendants' Consumer Financial Protection Bureau regarding fraud. The Defendants failed to properly investigate the Plaintiff's complaint and closed the case. The Defendants' Tivol Lewis, Emilie Burdette, Stephen M. Howe, Kansas Consumer Fraud Division, State of Kansas Office of District Attorney handling of the disputes violates the Fair Credit Reporting Act (FCRA) and the Consumer Financial Protection Act. The Defendants conducted sham investigations rather than properly reviewing the disputes as required by federal law. The Defendants' failure to properly investigate the Plaintiff's complaints has led to errors, to serious consequences for the Plaintiff's finances and credit.

**202.** The Plaintiff Chapter reported fraud regarding her credit report and the issues herein to Experian fails to adequately investigate the Plaintiff's disputes and even reinserts erroneous information into the credit reports of the Plaintiff. Experian's handling of the disputes violates the Fair Credit Reporting Act (FCRA) and the Consumer Financial Protection Act. Experian has conducted

Sham Investigations of Credit Report Errors as it relates to the Plaintiff's credit report. The Plaintiff alleges Experian did not take sufficient steps to intake, process, investigate her disputes, and notify consumers about consumer disputes, resulting in the inclusion of incorrect information on her credit reports. Experian made inaccurate or false information on the Plaintiff's credit reports regarding the alleged fraudulent loan, which has threatened her access to credit, employment, and housing. The Plaintiff disputed errors on her credit reports. Experian conducted sham investigations rather than properly reviewing the disputes as required by federal law. Experian's sham investigation into the Plaintiff's credit reporting complaints errors has led to serious consequences for the Plaintiff's finances and credit.

**203.** Experian is a subsidiary of Experian plc (LSE: EXPN), a global data broker and analytics company. Experian maintains information on the Plaintiff Chapter. Experian markets, advertises, sells, offers, and provides third parties with the Plaintiff's credit scores, Plaintiff credit reports, Plaintiff credit monitoring, and other related products to consumers and third parties. Information in consumer reports is provided to Experian by data furnishers, including banks, credit card companies, and debt collectors was false as it relates to the Plaintiff's credit. The Experian unlawfully reported false information regarding the Plaintiff's credit report to consumers reporting agency, Experian has sold false reports to creditors and businesses regarding the Plaintiff; the false reports evaluated for third parties to determine whether to offer the Plaintiff various products, services, and opportunities—such as a loan, employment, or housing.

**204.** The Fair Credit Reporting Act (FCRA) requires that consumer reporting agencies take steps to ensure consumer reports are accurate and to conduct investigations of information disputed by consumers. The FCRA provides people multiple ways to dispute inaccurate information on their consumer reports, including by contacting consumer reporting agencies directly. The FCRA also requires that consumer reporting agencies follow certain procedures before reinserting into consumer reports information that has previously been removed as the result of a dispute. The Plaintiff Chapter alleges that Experian has violated the FCRA's requirements for handling consumer disputes in numerous ways. Specifically, the Plaintiff alleges that Experian is harming credit by: conducting sham investigations that fail to properly address her consumer disputes.

**205.** The Plaintiff Chapter contends that when Experian handles disputes, Experian uses faulty intake procedures and does not accurately convey all relevant information about disputes to the original furnisher. Experian routinely and uncritically accepts the original furnisher's response to the disputed information, even when that response was improbable or illogical on its face, or when

Experian has other information available that suggests the furnisher is unreliable. After the investigation, Experian failed to send the Plaintiff proper consumer notices that fail to inform her of the investigation results, and instead provided information that is confusing, ambiguous, incorrect, or internally inconsistent.

**206.** The Plaintiff Chapter asserts Experian has improperly reinserted inaccurate information on her consumer/ credit reports regarding Santander Consumer USA Inc. credit account. Experian has failed to implement basic matching tools that prevent or greatly reduce the likelihood of reinsertion by a new furnisher of a previously deleted tradeline. Instead, Experian improperly reinserts inaccurate information into the Plaintiff's credit reports because it fails to match newly reported information with records of previously deleted information.

**207.** The Plaintiff Chapter, a consumer, has disputed the accuracy of an account regarding Santander Consumer USA Inc./ Aristocrat Motor Co Inc. and thought that their consumer report had been corrected, instead see the same inaccurate information reappear on her consumer report without explanation under the name of a new furnisher. In addition to alleging violations of the FCRA's requirements, the Plaintiff alleges that Experian's faulty dispute intake procedures and failure to provide furnishers with consumer-submitted documentation, uncritical deference to furnishers' responses to disputed information, and failure to prevent improper tradeline reinsertions also violate the Consumer Financial Protection Act's prohibition on unfair acts or practices.

**208.** The Plaintiff Chapter further alleges that Experian violated FCRA by failing to properly conduct reinvestigations of disputed information within her consumer credit files; failing to delete inaccurate, incomplete, or unverified information in consumer credit files; failing to provide adequate written notice to her of the results of its reinvestigations; failing to prevent the improper reinsertion of previously deleted information from consumer credit files; and failing to follow reasonable procedures to assure maximum possible accuracy of the credit information Experian reports on consumers. In addition, Experian committed unfair acts or practices in violation of the Consumer Financial Protection Act of 2018- 2025 by (1) failing to convey consumers' disputes to furnishers fully and accurately, and instead distorting, truncating, and mischaracterizing consumers' disputes; (2) relying excessively on furnishers to resolve disputes, routinely doing nothing more than sending the dispute to a furnisher and implementing the furnisher's response, despite having evidence of that furnisher's unreliability; and (3) improperly reinserting tradelines into the Plaintiff /consumer credit reports due to its practice of failing to adequately match newly reported tradelines to tradelines that were previously deleted as a result of a dispute if the subsequent furnishing was from a new furnisher.

**209.** The costs of the Experian false reporting upon the Plaintiff's Chapter credit report error include: the Plaintiff has received a lower credit score then she would had the false report upon her credit report did not appeared, the Plaintiff has received higher interest rates for your credit card, loans, and loss of opportunities; higher insurance premiums on home and car offers, loss of a job opportunity, and denial of loan and credit applications.

**210.** The Plaintiff Chapter filed an Experian dispute that the account was not correct and was fraudulent and to remove it. Experian failed to correct the error, and Experian is now violating the Fair Credit Reporting Act (FCRA) and her consumer rights. Experian failed to delete and or remove the false and inaccurate information from the Plaintiff's account and failed to properly investigate within 30 days from the date of the dispute; Experian failed to verify that the information is incorrect and correct or remove the mistake. The Plaintiff has an inaccurate account reporting on her Experian credit report. Experian is currently reporting false and inaccurate information on the Plaintiff's credit report. The Plaintiff disputed with Experian, but Experian verified the false information on the account. As a result of Experian's inaccurate reporting, Plaintiff has been denied credit opportunities and the right to housing.

**211.** The Plaintiff Chapter has an inaccurate account reporting on her Experian, TransUnion, and Equifax credit reports. The Plaintiff has never had an Affirm account listed on the Experian, TransUnion, or Equifax credit reports. The Plaintiff disputed with Experian, TransUnion, and Equifax, but the accounts continued to be verified. As a result of this account's reporting, Plaintiff Chapter is unable to obtain a car loan, credit cards and or mortgage loan approval. Trans Union, Experian, and Equifax all failed to correct the inaccurate reporting, and the Plaintiffs suffered financial damage as a result. The Plaintiff is the victim of identity theft, bank fraud, loan fraud, etc. She disputed two times fraudulent accounts with Experian, TransUnion, and Equifax were The Plaintiff detailed to Experian, TransUnion, and Equifax that the account on her credit reports was fraudulent; Experian, TransUnion, and Equifax failed to block the fraudulent Chrysler Capital/ Santander Consumer accounts and verified them as accurate. In November 2024, the Plaintiff filed new complaints with Experian, TransUnion, and Equifax by mail. When the Plaintiff sent the dispute by mail, Experian, TransUnion, and Equifax had a 30-day window to verify that the disputed information was incorrect and fix the error. Experian, TransUnion, and Equifax ignored the dispute and failed to verify the inaccurate information as correct after 30 days.

Defendants falsely hold Chapter Jackson out to have purchased a Vehicle from T.E.N. Investments Inc., an entirely Different Entity from the Name that appears on the Credit Application

**212.** Defendant Angela Lewitzke duly swore under oath and stated in court filings and swore upon personal knowledge on behalf of herself as an individual and on behalf of T.E.N. Investment Inc. (Exhibit 62)

- That she has reviewed the document production of T.E.N. Investments Inc. and that she is relying on personal knowledge and upon the business records of T.E.N. Investments Inc.
- T.E.N. Investments Inc. does business as "Aristocrat Motors" at its Porsche dealership located at 9415 W 65th St., Merriam, KS 66203 ("the Dealership").
- Soave does not operate the dealership; the entity that operates the dealership is T.E.N.
- The litigation involves a 2015 Porsche Cayenne, VIN No. WP1AB2A26 FLA 59974 hearing after the vehicle.
- T.E.N. originally sold the vehicle in new condition to Kraft Tool Company in 2015, the date on the original title.
- Kraft Tool Co. sold the vehicle back to T.E.N. in 2017
- In 2017, the dealership purchased the vehicle from Kraft…
- When the dealership purchased the vehicle back from Kraft in 2017 it did not retitle the vehicle in its own name.
- On December 4th, 2018, Jackson, as co-buyer and Michael Russaw as buyer entered into a retail installment contract with the dealership for the purchase of the vehicle.
- Jackson gave a $16,500 down payment in the form of a cashier's check and the remainder of the purchase was financed.
- The purchase price for the vehicle was agreed upon and was fair and consistent with the market value of the vehicle at the time of the sale.
- Though other deal-related documents may contain round numbers (e.g., 56,000) for the vehicle mileage, the amount as disclosed in the odometer disclosure statement was accurate as the actual miles as of the time of sale.
- The December 4th, 2018, retail installment contract lists the annual percentage rate, finance charge, amount financed, total of payments, in total sale price, following the subtraction of the $16,500 down payment given via cashier's check.

➢ It was T.E.N. and not Soave that sold the vehicle to Michael Russaw in Chapter Jackson and Soave was not a party to the contract.

➢ My only original involvement with this transaction was assigning the retail installment contract by affixing my signature.

➢ With respect to the vehicle, to the extent they were taken at all were taken in my capacity as an agent of T.E.N. Investments Inc. and not in my personal capacity.

**213.** Defendant Lewitzke, above sworn under oath, the affidavit (Exhibit 62) is perjury and false statements made under oath and filed in a court proceeding. Facts: The Plaintiff Chapter never purchased a car or applied for credit or filed out a credit application with the alleged dealership T.E.N. Investments Inc. but applied for credit and executed her signature to a credit application with the dissolved corporation Aristocrat Motor Co. Inc. (Exhibit 10,10a,10b) Although Aristocrat Motor Co. Inc. name was changed/ amended to ARMOCO, Inc. (Exhibits 8, 9,14,15) Aristocrat Motor Co. Inc. Corporation Dissolved Evidence by - Exhibits 8, 9, 13, 13a, 14,15. Chapter applied for credit only with Aristocrat Motor Co. Inc. a dissolved entity, not any entity Lewitzke is a member of nor did the Plaintiff Chapter apply for credit with T.E.N. Investments Inc., evidenced by Aristocrat Motor Co. Inc. dealer credit application and entirely different entity (Exhibits 2, 10,10a, 10b, 11, 12).

**214.** The Plaintiff Chapter never conducted any business with T.E.N. Investments Inc. as the dealer to any car at the address 9415 W 65th St., Merriam, KS 66203 ("the alleged Dealership") as such address is stated in Defendants Marion, Lewitzke's affidavits as the dealership the Plaintiff Chapter Jackson went to obtain the allege vehicle financing. (Exhibit 62 line 3, Exhibit 61 line 3,)

**215.** Defendant Lewitzke has never received a paycheck from Aristocrat Motor Co. Inc. is not a member or owner of Aristocrat Motor Co. Inc. The members of the dissolved corporation, owners, and stockholders of "Aristocrat Motors Co. Inc.", according to public record, are Defendants Horst Schwab, Manfred Hetzel, Edward A. Setzler, Terry Buchholz, Ernie Tumminia, and Nick Allen. (Evidence by Exhibits 2,3,4,6,7,8,9,13a)

**216.** It is Aristocrat Motor Co. Inc. Retail Installment contract evidence by 10, 101, 10b, 11,12, not T.E.N. Investments Inc., the address on the retail installment contract is 9400 West 65th Street Merriam KS, 66203 (Exhibit 1) which is not the same address which Lewitzke sworn under oath in her affidavit (Exhibit 62 -line number 3. -9415 W 65th Street, Merriam KS 66203) as being the address of T.E.N. Investments Inc.

**217.** According to public documents of Aristocrat Motor Co. Inc., it is factual that Aristocrat Motor Co. Inc. had two corporations and named them the same exact corporation's names. "Aristocrat Motor Co. Inc." corporations were incorporated in Missouri (Exhibits 2,7,13,13a), and the other "Aristocrat Motor Co. Inc. " was incorporated in Kansas (Exhibits in support 8,9,14,15), both having the same address as its principal place of business and headquarters; both dissolved back in 2000. (Exhibits 13a, 8,9,).

**218.** Aristocrat Motor Co. Inc., the Kansas corporation, amended its name to ARMOCO, Inc. before it dissolved, and Aristocrat Motor Co. Inc. in the state of Missouri kept the name Aristocrat Motor Co. Inc. before its dissolution. The Plaintiff Chapter conducted business in Kansas, so it is reasonable to believe that she conducted business with Aristocrat Motor Co. Inc., which amended its legal name to ARMOCO, Inc. Therefore, if any ARMOCO, Inc. name should have appeared on the dealer application, not Aristocrat Motor Co. Inc. (Exhibit 8, 10,10a,10b).

**219.** Defendant Lewitzke has never been employed by Aristocrat Motor Co., Inc., and stated in her affidavit that she assigned the retail installment contract. (Exhibit 62 line 25, also Exhibit 31 page 5 of 5 Lewitzke signature on the retail installment contract) It is clear from the Aristocrat Motor Co. Inc. dealer credit application agreement and the Chrysler Capital Application Status report (Exhibits 10, 10a,10b, 11,12) that the dealer to the transaction was clearly Aristocrat Motor Co. Inc., NOT T.E.N. Investments Inc. It was impossible for Lewtizke to assign a retail installment on behalf of Aristocrat Motor Co. Inc., for it did not have a dealer's license and did not have the formation to conduct business or enter into a contract with Chapter Jackson for the entity Aristocrat Motor Co. Inc. was dissolved on December 4, 2018 and had been for 18 years when the retail installment contract, and Aristocrat Motor Co. Inc. dealer credit application was presented to the Plaintiff Chapter. Lewitzke's sworn affidavit is an admission of guilt filed in a court proceeding to obtain a judgment by court fraud, to further her deception, and unconscionable practices to obstruct justice. (Exhibit 62)

**220.** On December 4, 2018, Aristocrat Motor Co. Inc. and/or ARMOCO, Inc. were not supposed to be in operation, and the shareholders, stockholders, and owners of said dissolved corporations are personally liable to the Plaintiff Chapter for the conduct detailed herein.

**221.** On October 13th, 2023, Defendant Kayce Jones stated (in short); in a duly sworn affidavit, (Exhibit 64) that she received the document production of T.E.N. Investments Inc. and she's relying on personal knowledge of what the business records of T.E.N. Investments show. She goes on to state that she is the title clerk at "Aristocrat Motors Porsche Dealership" and that the litigation involves a

2015 Porsche Cayenne her first involvement with the vehicle was in 2018 or earlier in 2019. She stated she signed the original title of the vehicle on behalf of the "dealership" and within 60 days of December the 4th 2018 the dealership sent the necessary title documents to the address she goes on to state that her actions were taken with respect to the vehicle and were taken in her capacity as an agent of 10 investments and not in her personal capacity.

**222.** Defendant Kayce Jones has never been employed by Aristocrat Motor Co., Inc. It is clear from the Aristocrat Motor Co. Inc. dealer credit application agreement and the Chrysler Capital Application Status report (Exhibits 10, 10a,10b, 11,12) that the dealer to the transaction was clearly Aristocrat Motor Co. Inc., *NOT* T.E.N. Investments Inc.

**223.** In October 2023, Defendants Hellweg and Killilea stated in a sworn, under oath affidavit (Exhibits 65, 66) that any actions which they took regarding the vehicle were taken in their capacity as agents of T.E.N. Investments Inc. It is clear from the Aristocrat Motor Co. Inc. dealer credit application agreement and the Chrysler Capital Application Status report (Exhibits 10, 10a,10b, 11,12) that the dealer to the transaction was clearly Aristocrat Motor Co. Inc. (Exhibits 2, 7,13a,), *NOT* T.E.N. Investments Inc which are entirely two different corporations. (Exhibits 26,30,30a, 30b,30c,30d,30f,30e).

**224.** Defendant Killilea has never held a position or served as an officer to the dissolved corporations Aristocrat Motor Co. Inc. or ARMOCO, Inc. (Exhibits 2, 7,8,9,13a,) which Aristocrat Motor Co. Inc, Dissolved corporation name appears as the only dealer on the credit application only (Exhibits 10, 10a, 10b). Kevin Killilea is the Vice President of T.E.N. Investments Inc., evidenced by (Exhibits 26,30,30a, 30b,30c,30d,30f,30e). He also serves as an officer of ARM PO, Inc., which has its principal place of business located at 9400 W. 65th Street, Merriam, Kansas 66203 (Exhibit 33); which is the same address at which the dissolved corporation Aristocrat Motor Co., Inc. purports to have an automotive dealership. (Exhibits 2,3,4,5,6). Defendant Kevin Killilea also serves as an officer to KCMER Investments, Inc., Soave Automotive Group, Inc. He serves as the vice president, and the principal place of business is 13851 Madison Ave, KCMO 64145. (Exhibits 35,36) Defendant Killilea did not take any action in his capacity as an agent of T.E.N. Investments Inc.; for the entity T.E.N. Investments Inc. is not the party, dealership to the contractual agreement or dealer agreement of the credit application. Killilea's statements within his affidavit (Exhibit 66) were to cover up the facts that a dissolved corporation conducted business with the Plaintiff Chapter and had no legal formation, business license, or dealership license to conduct said business legally.

**225.** On October 13, 2023, Defendant Turner executed an affidavit (Exhibit 63) as duly sworn under oath upon her personal knowledge that and stated in short 1.) She received the document production of T.E.N. Investments Inc. and is relying on her personal knowledge upon the business records of T.E.N. Investments Inc. showing. 2.) As of December 2018, she was the finance manager at Aristocrat Motors Porsche dealership in Merriam, KS (herein the dealership) 3.) That she signed many documents related to the deal for the vehicle, including the retail installment contract 4.) That the defendant Russaw and the Plaintiff Chapter purchased the vehicle from the dealership in December 2018 5.) That she was a witness that Jackson and Russaw signed many of the documents on December 4th, 2018, 6.) Jackson gave a $16,500 down payment in the form of a cashier's check and the remainder of the purchase was financed 7.) The litigation involves a 2015 Porsche 8.) The purchase price for the vehicle was agreed upon and was a fair consistent with the market value of the vehicle at the time of sale 9.) The lender Chrysler Capital, approved the loan and set the terms on December 4th, 2018 10.) Chapter Jackson as Co buyer signed the five-page retail installment contract twice on page one once on page three once on page 4 and twice on page 5 on December 4, 2018 11.) Russaw and Jackson represented that they lived in Missouri… I told them that they would have to register the vehicle themselves in Missouri in other words, the dealership wouldn't do it.. 12.) After we submitted the retail installment contract to Chrysler capital Chrysler capital subsequently definitely informed us that we were missing a signature for chapter Jackson on the second page of the retail installment contract. 13.) The dealership obtained Jackson's signature on page 2 and submitted A subsequent version of the retail installment contract to Santander as documentation for the loan.14.) Any actions taken by Turner she asserts was in respect to the vehicle to the extent they were taken at all we're taking in her capacity as the agent of T.E.N. Investments Inc. specifically as a finance manager assigned to the subject transaction.

**226.** Turner has never been employed by Aristocrat Motor Co., Inc. It is clear from the Aristocrat Motor Co. Inc. dealer credit application agreement and the Chrysler Capital Application Status report (Exhibits 10, 10a,10b, 11,12) that the dealer to the transaction was clearly Aristocrat Motor Co. Inc., *NOT* T.E.N. Investments Inc. On December 4, 2018, Turner never held employment with Aristocrat Motor Co. Inc. and was certainly not Aristocrat Motor Co. Inc. finance manager. Aristocrat Motor Co. Inc. dissolved in 2000, and the alleged transaction occurred in 2018 on behalf of Aristocrat Motor Co. Inc. entity and not the entity T.E.N. Investments Inc.

**227.** Turner executed the retail installment contract as the finance manager (Exhibit 1) of Aristocrat Motor Co. Inc. She also presented to the Plaintiff Chapter the Aristocrat Motor Co. Inc. dealer credit

application (Exhibit 10,10a,10b). Turner also filed out the credit application in her handwriting (Exhibit 31), Chrysler Capital Application Status clearly details at the top of the page that the Chrysler Capital application was for "Aristocrat Motor Co Inc". (Exhibit 11) T.E.N. Investments Inc. entity name doesn't appear anywhere on the document for the credit application as the origination lender or dealer or dealership. (Evident by Exhibits 10,10a, 10b, 31). Chrysler Capital Contract Status (Exhibit 12) is evident that Chrysler Capital Contract Status was for the Aristocrat Motor Co. Inc. such name appears on the documents, which is the same name that appears on the dealer credit application docs (Exhibit 10, 10a, 10b)

**228.** Notice regarding the credit application (Exhibit 10,10a,10b) from Santander Consumer USA, Inc., its officers, and employees, and sister companies are letters addressed to two entirely different entities. 1.) Aristocrat Motor Co. Inc. (Exhibits 11,12,) and 2.) T.E.N. Investments Inc. (Exhibits 40, 53).

**229.** On December 7, 2018, Chrysler Capital sent Aristocrat Motor Co. Inc. a Chrysler Capital Application Status (Exhibit 11) regarding the Plaintiff Chapter and the credit application. (Exhibit 10,10a,10b) On December 14, 2018, Chrysler Capital addressed a letter to TEN Investments Inc. a Return Contract Package with the Application ID appearing on the documents as "106194276"; (Exhibit 40), stating > Contact Signature Missing > Contract Signature Missing. The same Application ID number "106194276", which appears Chrysler Capital letter to T.E.N. Investments Inc. (Exhibit 40) appears on the Aristocrat Motor Co. Inc. document from the Chrysler Capital Application Status Report at the top of the page (Exhibit 11). On January 9, 2019, Chrysler Capital sent Aristocrat Motor Co. Inc. a Chrysler Capital Contract Status and at the top right-hand corner of the page appears to have the Defendant Stephanie's name at the top. (Exhibit 12). On January 11, 2019, Chrysler Capital sent a letter addressed to TEN Investments Inc. The letter has an application ID number at the top center of the page (Application ID 106194276) (Exhibit 53). The same Application ID 106194276 numbers (which appear on Exhibit 53 appear on Exhibit 11) appear on the Aristocrat Motor Co. Inc. Chrysler Capital Application status letter (Exhibit 11).

**230.** Chrysler Capital's letter to Ten Investments Inc. stated (Exhibit 53)

Dear Ten Investments Inc.
We have reviewed the enclosed contract package for Michael Russaw and are returning it due to the following reason(s)

- ➢ Title Does Not Meet Requirements
- ➢ Title Does Not Meet Requirements
- ➢ Strips Not Received Book Out

- Strips do not receive Book Out
- Down Payment Not Received
- Down Payment Not Received
- Dealer Expired Approval
- Dealer Expired Approval

**231.** Defendant Tuner's handwriting is on the Chrysler Capital letter to Ten Investments Inc. (Exhibit 53). In her handwriting, she writes on the document as follows:

- No Bookout Sent w/contract
- Book? Not w/contract they are pulling the same book
- Tony Covering -fee
- Need Book
- Didn't ask for Stips unitl after app. expired
- Expiration fee $295
- Anthony McCoy (214)452-5867

***<u>Civil Conspiracy, Aiding and Abetting Clients, Abuse of Process, Abuse of Power, unconscionable and unethical Practices</u>***

**232.** Plaintiff Chapter informed Defendants Tivol Lewis, the Johnson County District Attorney's Office—Consumer Fraud Division, Emilie, and the Johnson County, Kansas Consumer Protection Unit, specifically Lewis, that Stephanie Turner had played a central role in the fraudulent origination of the loan at issue. Despite this critical allegation, Defendants failed to take any meaningful investigative steps: they never contacted or interviewed Stephanie Turner, nor did they attempt to verify the allegations through direct inquiry. Furthermore, although Defendants acknowledged that Santander Consumer was the alleged lender, they made only a single, unsuccessful phone call to the company, failed to reach a live representative, and never followed up or issued a subpoena to obtain the relevant loan records or internal communications. This grossly inadequate response fell far short of even the most basic investigatory standards. By refusing to pursue obvious and necessary leads, including both a key individual (Turner) and the lending institution (Santander),

**233.** Defendants effectively conducted a sham investigation, designed not to uncover the truth, but rather to dismiss Plaintiff's complaint without due diligence. Such deliberate inaction in the face of clear evidence and specific leads constitutes a willful dereliction of duty and suggests potential bias or negligence in the handling of Plaintiff's fraud allegations.

**234.** Upon Plaintiff Christopher Jackson's discovery of the herein detailed fraud on or about August 2021, he began to assist the Plaintiff Chapter in seeking redress. He then spoke to the Defendant Hellweg, who stated he would be obtaining a duplicate title from the Defendant's Kansas Department of Motor Vehicles/Kansas Department of Revenue) for the vehicle and that he would get the Plaintiff Chapter into a new car.

**235.** Upon discovering the fraudulent conduct described herein, around August 2021, Plaintiff Christopher Jackson began actively assisting Plaintiff Chapter in her efforts to seek redress. During this period, Jackson engaged in a conversation with Defendant Hellweg. In that discussion, Defendant Hellweg acknowledged the issue and assured Jackson that he would take concrete steps to resolve it. Specifically, Hellweg stated that he would obtain a duplicate title for the vehicle from the Kansas Department of Motor Vehicles/Kansas Department of Revenue and further committed to assisting Plaintiff Chapter in securing a vehicle. These assurances were material representations that led Plaintiffs to believe that corrective action was forthcoming. However, to date, no such duplicate title was provided, nor was a vehicle ever delivered. Defendant Hellweg's statements proved to be either false promises or negligently unfulfilled obligations, contributing to continued harm to the Plaintiff Chapter.

**236.** Despite Defendant Hellweg's assurances regarding a replacement vehicle, Plaintiff Chapter made it explicitly clear that she did not want a new car. Instead, she sought a refund of the money she had paid because of the fraudulent loan and transaction. To formalize her position, Plaintiff began sending multiple emails and filing complaints, demanding a resolution that would include the return of her funds. These demands were direct and unambiguous, clearly indicating Plaintiff's preference for financial restitution over the offer of a replacement vehicle.

**237.** Following Plaintiff Chapter's complaints to the Consumer Fraud Division, she was directed by Defendant Hellweg to address all related issues through legal counsel. As a result, Plaintiff began corresponding via email with Defendant Kevin Case, who identified himself as legal counsel for "Soave Automotive Group/Aristocrat Motors/Kansas City Mercedes-Benz." In an email (Exhibit 67), Mr. Case informed Plaintiff that she was no longer permitted to contact his purported clients or their representatives directly, stating:

"I have found that once matters reach me it is no longer productive to have dialogue with my client so please respect my request that you direct all further communications regarding this matter to me in lieu of direct contact with my client. To that end, if you have an attorney working on your behalf, I will be pleased to speak directly to her or him on this matter."

Mr. Case further asserted that he had been provided documentation concerning the transaction at issue. However, this communication included several false and misleading representations. Specifically, Mr. Case claimed to represent “Aristocrat Motors,” even though no such legal entity existed at the time. There was no registered business or corporation under the name “Aristocrat Motors” that he could legally represent. Moreover, Mr. Case acknowledged possessing documents related to Plaintiff Chapter’s loan—documents that included her Social Security number and other private, personally identifiable information even though Plaintiff had never conducted business with any of the individuals or entities Mr. Case claimed to represent. His receipt and handling of such sensitive information, without proper authorization or legal basis, constitutes a serious breach of privacy and further supports Plaintiff’s claim that Mr. Case held himself out as counsel for a non-existent entity while engaging in unauthorized review of confidential loan materials.

**238.** Defendants: Office of the District Attorney, Lewis, Howe, Consumer Fraud Division and Burdette sent a Subpoena Duces Tecum addressed (Exhibit 52) to;

Aristocrat Motors
ATTN: Marion Battaglia, President
9400 W. 65th Street
Merriam, KS 66203

**239.** The Subpoena has instructions which states “the term business” shall mean Aristocrat Motors and all of its subsidiaries and departments. (Exhibit 52)

**240.** Upon the Defendant Battaglia receiving said subpoena, Mr. Case interjected himself, his law practice Case Linden P.C., Trevor Bond, and Patrick Linden into the Consumer Fraud investigation, supplying the alleged loan documents to the Johnson County District Attorney’s office.

**241.** Defendants Case Linden P.C., Trevor Bond, and Patrick Linden were in possession of the loan application and related credit documents, which unequivocally indicated that the applicant and contractual party was Aristocrat Motor Co. Inc., a corporation that was not a client of any of the Defendants. Despite this, the Defendants willfully disregarded these facts and responded to the subpoena as though their clients were the actual parties to the loan agreement.

**242.** Defendants Case Linden P.C., Trevor Bond, and Patrick Linden misrepresented their role by portraying themselves as attorneys for the contractual party to the loan, thereby making knowingly false representations of material fact and/or law. These false statements were communicated to Plaintiff Chapter as well as to Defendants Lewis, Burdette, and the Office of the District Attorney, Consumer Fraud Division.

**243.** Notably, Defendant Kevin Case, in an email (Exhibit 67), confirmed his receipt and review of the loan documentation related to the transaction in question. Given the clear identification of Aristocrat Motor Co. Inc. as the original lender, dealer, and dealership in the relevant documents (Exhibits 10, 10a, 10b, 11, and 12), Mr. Case knew or should have known that his clients were not the actual parties to the loan contract. Furthermore, he would have seen that Aristocrat Motor Co. Inc. was a dissolved corporation, making it all the more critical to disclose the correct party to the agreement (see Exhibits 13, 13a, 8, and 9).

**244.** Instead, Mr. Case, along with Defendants Case Linden P.C., Patrick Linden, and Trevor Bond, intentionally withheld these material facts and actively assisted their clients in falsely representing themselves as the promisor under the loan during both legal proceedings and a consumer fraud investigation. These actions were not only deceptive but constituted a deliberate obstruction of the truth in a matter involving public investigation and legal enforcement.

**245.** Defendants Case Linden P.C., Patrick Linden, Welch, and Trevor Bond failed to disclose a material fact that was critical to the investigation, thereby aiding and abetting their clients in committing criminal and fraudulent acts. Specifically, the Defendants concealed the fact that the true party behind the automobile loan was a dissolved corporation, Aristocrat Motor Co. Inc., not their clients. This misrepresentation and omission of material facts to the investigators not only misled the authorities but also facilitated the dismissal of Plaintiff Chapter's complaint, (Exhibits 59, 60) which had been filed with the Johnson County Consumer Fraud Division. The Defendants' deliberate failure to disclose the true nature of the loan transaction and their active concealment of critical details regarding the dissolved status of the corporate entity, resulted in the unjust dismissal of Plaintiff's claims. By withholding this crucial information, the Defendants effectively obstructed the investigation and allowed their clients to evade responsibility for their fraudulent actions, thereby denying Plaintiff Chapter the opportunity for redress.

**246.** After the investigation was closed, Plaintiff Chapter was left with no alternative but to seek redress through the courts. She was forced to initiate legal proceedings based on the incomplete and flawed nature of the investigation and the false representations regarding the parties involved in the dispute. Specifically, Plaintiff had been led to believe—through the actions and misrepresentations of the Defendants, including Turner, Soave Automotive Group Inc., T.E.N. Investments Inc., Marion, Jones, Hellweg, Kevin Lewis, and their attorneys Bond, Linden, Case, Welch, as well as the law firm Case Linden P.C.—that these parties were the actual parties to the contractual agreements. The Plaintiff Chapter sought rescission of the contract based on fraud, believing that the Defendants were

the rightful parties to the loan transaction. Throughout the process, the Defendants continued to present themselves to the Plaintiff as the dealership, dealership employees, and corporate officers of the entity responsible for originating the loan, further cementing this false narrative. However, the true parties responsible for the fraudulent loan—specifically, the dissolved corporation Aristocrat Motor Co. Inc.—were never disclosed to Plaintiff by the Defendants. Had Plaintiff been provided with the full and accurate facts, including the revelation of the dissolved status of the corporation behind the loan, she could have pursued a more informed course of action earlier in the process. Instead, she was misled by the Defendants' false and incomplete representations, which directly contributed to her decision to resort to litigation to seek justice and remedy the harm caused by the fraudulent actions and the sham investigation.

**247.** The Defendants continued their unlawful misrepresentation by holding themselves out as the true contractual parties to the loan agreements, despite having no legal standing as such. They further perpetuated this misrepresentation by sending Plaintiff Chapter settlement offers related to the contract with Aristocrat Motor Co. Inc., even though they were not the rightful parties to the contract. Defendant Case, on behalf of his clients, sent settlement discussion emails (Exhibit 68) to Plaintiff Chapter, and Defendant Bond sent formal settlement offers. Within these offers, Mr. Bond clearly stated that the Retail Installment Contract (Exhibit 1) would remain in effect, further reinforcing the false notion that his clients were the legitimate parties to the loan agreement. The law firm Case Linden P.C. and its attorneys continued to misrepresent their clients as the true parties to the contract, even though they were never hired by the dissolved corporation, Aristocrat Motor Co. Inc., to represent its interests or negotiate settlements on its behalf. These actions not only furthered the fraudulent misrepresentation but also constituted unauthorized practice of law, as they were acting on behalf of a non-existent entity and making settlement offers without proper authority.

**<u>Civil Harassment, Intimidation Tactic; Abuse of Power, Abuse of Process, Misrepresentations of Facts; Obstruction of Justice, Civil Conspiracy, Civil Harassment</u>**

**248.** During the civil proceedings, Plaintiff Chapter sought to amend her complaint, and Plaintiff Christopher Jackson sought to join the litigation. In response, the Defendants—Ronald G. Meyer, Kraft Tool Company, Turner, Jones, Marion, Hellweg, Kevin, Angela, Soave Automotive Group, T.E.N. Investments Inc., Bond, Kevin Case, Patrick Linden, Welch, and Case Linden P.C. began to abuse the legal process and harass both Plaintiffs. The Defendants were infuriated by the Plaintiff's attempts to amend her complaint and Christopher's desire to join the lawsuit. In the civil court

proceeding, which only relates to consumer fraud, the Defendants filed the Plaintiff's vacated conviction that had been dismissed in the Plaintiff's favor, such was an unrelated proceeding.

**249.** Defendants went to great lengths to introduce improper evidence in the civil case. Specifically, they filed a criminal conviction of Plaintiff Chapter, which had already been superseded and set aside. At the time Defendants referenced this conviction, it legally did not exist because the conviction had been overturned, and a not guilty verdict had been entered. By submitting this outdated and legally invalid document to the court, the Defendants intended to prejudice Plaintiff's case before the judge and undermine her credibility in the ongoing case. Since the Defendants did so succeed, the Plaintiff has been unlawfully locked out of the Kansas State court and treated with bias from such date of the Defendants' filings. The Defendants scoured public records, going to the Orange County Superior California court docket, where they found the initial criminal conviction. However, they deliberately ignored the fact that this conviction had been overturned, and a not guilty verdict had been entered. Instead, the Defendants took the original, invalidated conviction and submitted it to the Kansas state court record as if it were still a valid part of Plaintiff Chapter's record. This action was a clear attempt to create the false impression that the Plaintiff had an existing criminal conviction, when, in fact, the conviction had been set aside and dismissed. This deliberate act of introducing superseded criminal records was not only misleading, a misrepresentation of facts, slander, deformation, false light, past light but also an intentional effort to harm Plaintiff Chapter's case and to prejudice the court against her, despite the Defendants' full knowledge that the conviction had been legally nullified.

**250.** On or about September 2023, Defendants Trevor Bond and Case Linden P.C. unlawfully recorded a private conversation with Plaintiff Chapter over the telephone without her consent or authorization. The conversation was part of a meet and confer regarding the civil state case. Despite being explicitly informed by Plaintiff Chapter that she did not consent to the recording and that she was in California, where recorded telephone conversations require the consent of all parties involved, the Defendants proceeded to record the call. California is a "two-party consent" state, meaning that it is illegal to record any telephone conversation unless all participants have given their explicit consent. Defendants never obtained consent from the Plaintiff to record the conversation, nor did they seek a court order to do so. After recording the call, the Defendants sent the recording via email to the Plaintiff, further violating her privacy rights. By recording the conversation without consent, the Defendants violated California Penal Code § 632, which specifically prohibits the unauthorized recording of confidential communications.

**251.** Under this law, confidential communications are any conversations where the participants have a reasonable expectation of privacy, such as phone calls, private meetings, or personal discussions. Given the nature of the conversation, the Plaintiff had a reasonable expectation of privacy, especially considering that she was in a jurisdiction where two-party consent is required. The Defendants' actions were not only unlawful but also intended to intimidate and harass the Plaintiff. The recording was made with the purpose of exploiting private conversations without the Plaintiff's knowledge or consent, thereby violating her fundamental rights to privacy. These actions are a clear example of abuse of process and further evidence of the Defendants' malicious intent toward the Plaintiff.

**252.** On or about September 2023 induced the Plaintiff Chapter was induced to physical pain and suffering. Chapter suffers from a serious chronic disease, (Exhibits 79,76,77) which she shared with the Defendants prior to the occurrence, including Ronald G. Meyer, Kraft Tool Company, Turner, Jones, Marion, Hellweg, Kevin, Angela, Soave Automotive Group, T.E.N. Investments Inc., Bond, Kevin Case, Patrick Linden, Welch, and Case Linden P.C.. She informed the Defendants that, due to her medical condition, it was imperative that they come to her for the deposition rather than requiring her to travel. She explicitly communicated that traveling under her condition was life-threatening and shared relevant medical records as evidence of her health issues with the defendants and the court. Despite her plea, the Defendants refused to accommodate her request and insisted that she travel to them for the deposition. Reluctantly, the Plaintiff attempted to comply with their demands and traveled from California to Kansas City for the deposition. However, during her flight, the Plaintiff experienced a severe medical emergency. (Exhibits 70,77, 79) Despite her prior warnings to the Defendants about the risks of traveling, she lost the ability to breathe and went into cardiac arrest while on the airplane. The flight crew was forced to make an emergency landing after speeding up the time of the flight to get her medical assistance (Exhibits 71, 72,73,74,75) This life-threatening incident endangered not only the Plaintiff's life but also the lives of everyone on the plane.

**253.** There were no medical personnel available on board to assist, causing the Plaintiff to suffer significant pain, distress, and emotional turmoil. Following the episode, the Plaintiff continued to suffer from shortness of breath and other health issues for months. During the time the Plaintiff was in the hospital, the Defendant Bond called the Plaintiff over the telephone over and over demanding that she attend the deposition and sent the Plaintiff an email letter ( Exhibit 78) demanding that the Plaintiff provide him with her private medical records, currant photographs, communications and any other documents that give details about the medical conditions the plaintiff experience. Defendant Bond,

Case Linden P.C., Case Linden Kurtz Buck P.C. letter stated that he needed those documents to assess his path going forward and stated that he would treat any of the Plaintiff's medical records as highly confidential and flight information. Defendant Bond had no consideration for the Plaintiff's human rights or privacy, yet alone health. Bond also stated in the letter that he wanted documentation as to the time when the Plaintiff's issues occurred, while the plaintiff was in the hospital, having trouble breathing. Bond stated he wanted an explanation for why this is, then he would be happy to hear it. Bond also stated that he incurred costs related to the Plaintiff's failure to appear at the deposition despite the Plaintiff informing the Defendants of her chronic and severe deadly disease. Had the Defendants not misrepresented the facts and claimed to be the true parties to the contractual agreements, the Plaintiff would have had a vehicle to drive and avoided such medical risks during travel. The Defendants' refusal to address her legitimate health concerns and their insistence on forcing her to travel under dangerous conditions contributed directly to this tragic health crisis, leading to the Plaintiff enduring unnecessary physical pain, emotional suffering, and long-term consequences.

**254.** The Plaintiff Chapter's chronic disease is stress-induced, meaning it is triggered by emotional and psychological stress. Prior to the onset of the litigation with the Defendants, the Plaintiff did not suffer from this condition, nor had she been diagnosed with it. The intense stress caused by the ongoing legal battles with the Defendants directly contributed to the development and exacerbation of her chronic health issues, further compounding the emotional and physical toll the litigation has had on her.

**255.** During civil proceedings, the Defendants Ronald G. Meyer, Kraft Tool Company, Turner, Jones, Marion, Hellweg, Kevin, Angela, Soave Automotive Group, T.E.N. Investments Inc., Bond, Kevin Case, Patrick Linden, Welch, and Case Linden P.C.—and their attorneys collaborated with the party who had obtained a $1,000,000 judgment against Plaintiff Chapter; the party had obtained the judgment against the Plaintiff Chapter based upon the Defendants herein described fraud for the Plaintiff did not have a vehicle to get to and from her P.O. Box, resulting in a default judgment being entered due to her failure to respond timely. The Defendants and their counsel conspired to make false allegations about Plaintiff Chapter's creditworthiness to the parties who had obtained the 1-million-dollar judgment against the Plaintiff. Defendants falsely held themselves out as the Plaintiff's creditors and claimed that the Plaintiff had not been paying her debts as they came due.

**256.** In furtherance of their fraudulent scheme, the Defendants and their attorneys assisted in providing false information to United States Trustee Victor Webber, particularly regarding the alleged loan in question. This misinformation played a crucial role in attempting to force Plaintiff Chapter into

involuntary bankruptcy. The Defendants continued to misrepresent themselves as the Plaintiff's creditors, the dealership to the loan, and employees of the entity who originated the loan and falsely claimed that Plaintiff's Chapter was not meeting her financial obligations. In November 2023, these false representations led to Plaintiff Chapter being pushed into involuntary bankruptcy based on the erroneous belief that she owed money to Santander Consumer. The Defendants furthered their fraud by filing a notice of stay in the federal court proceeding, where they falsely asserted that they were the Plaintiff's creditors based on the fraudulent loan. During the bankruptcy proceedings, Trustee Victor Webber stated on the record that he was aware of the debt to the auto dealership, even though the Defendants had no legitimate claim against the Plaintiff. This false representation of a non-existent debt caused Plaintiff Chapter significant harm, including:

- Emotional distress from the forced bankruptcy proceedings;
- The need to respond to the involuntary bankruptcy petition;
- Delays in the ongoing civil litigation;
- Increased legal costs, including attorney fees and appeal fees related to the bankruptcy proceedings.

Ultimately, the Plaintiff Chapter had to appeal the bankruptcy decision, which was remanded. Despite this, she remains subjected to ongoing litigation and the consequences of the fraudulent bankruptcy filing, all of which were directly caused by the Defendants' misrepresentation of their role as creditors and creditor attorneys. The Plaintiff doesn't owe any debt to T.E.N. Investments Inc. and has no contractual agreement with them and said entity is not the originator to any loan with the Plaintiff Chapter.

Defendants' Misrepresentations are Uncovered; Defendants Attempt to Evade Legal Responsibilities of Their Joint Actions and Continue Their Fraudulent Conduct Concerning the Alleged Loan Agreement; Defendants Began to Dismantle and Attempt to Set Up Different Entities and Trade Names.

**257.** In late September 2024, a family member of Plaintiff Chapter informed her that his former mentor, Horst Schwab, had become ill. During their conversation, the Plaintiff decided to research the name "Horst Schwab", which led to a significant discovery. Upon investigation, Plaintiff Chapter uncovered that Horst Schwab was the founder of the entity "Aristocrat Motor Co. Inc.", the very corporation that was the true party to the contractual agreement related to her loan. This

revelation was pivotal, as it exposed that Aristocrat Motor Co. Inc.—and not the parties previously identified by the Defendants, Case Linden P.C. and its attorneys, T.E.N. Investments Inc. and its employees, and Soave Automotive Group —was deceptive and hid from the Plaintiff the actual party responsible for the loan contract "Aristocrat Motor Co. Inc. The discovery of this crucial fact further underscored the Defendants' ongoing misrepresentation of the true parties involved, which had been hidden from Plaintiff Chapter during the course of the investigation and legal proceedings.

**258.** Mid mid-October 2024, Horst Schwab passed away, and Plaintiff Chapter came across his obituary. Chapter has a vision impairment she then employed Christopher Jackson to assist her and reviewing the obituary, she decided to conduct further research, which led to a shocking discovery (Exhibit 69). The Plaintiff learned that the true contractual party to her loan was a dissolved corporation, "Aristocrat Motor Co. Inc.", and that the corporate name itself was no longer protected. In fact, the name "Aristocrat Motor Co. Inc." was available for anyone to claim on a first-come, first-served basis. This revelation sparked a critical realization for the Plaintiff. She understood that to extricate herself from the fraudulent loan contract and prevent the Defendants—and their sophisticated attorneys—from continuing to use the dissolved corporation's name to perpetrate their fraud, she needed to take action swiftly. To protect herself and assert her rights, the Plaintiff made the decision to reincorporate the dissolved corporation "Aristocrat Motor Co. Inc." and start a new business under that name on October 26, 2024. By doing so, she sought to reclaim ownership of the name and prevent the Defendants from activating or using it for their fraudulent purposes (Exhibits 20A, 20C, 70).

**259.** First week of October 2024, the Plaintiffs Chapter and Christopher located the office of the Defendants Spenserv, Inc., Markley, Leck and others. Upon investigation, it was discovered that Spenserv, Inc. was listed as the registered agent of the dissolved company "Aristocrat Motor Co. Inc." Chapter immediately informed Spenserv, Inc. that according to the Missouri Secretary of State, the entity "Aristocrat Motor Co. Inc." had been dissolved since 2000, nearly 24 years ago. Chapter explained that she had obtained an auto loan from this dissolved entity and pointed out that Spenserv, Inc.was misrepresenting itself as the registered agent for nearly 24 years on behalf of a company that no longer legally existed. Chapter further noted to Defendants that there was no record of any resignation of agent filed with the Missouri Secretary of State for the dissolved company "Aristocrat Motor Co. Inc.". Christopher shared that the owner, Horst Schwab, had passed away, further underscoring that the company was no longer operational and could not be legally represented. He emphasized that the company was nonexistent, and that the Defendants were involved

in fraudulently holding themselves out as agents of a dissolved entity that had no legal standing, which had directly impacted Chapter's ability to properly understand and address the loan contract she had entered into.

**260.** On October 21, 2024, the Defendants Leck, Spenserv, Inc. and Blane Markley, in his capacity as Vice President of Spenserv, Inc., filed a Statement of Resignation of Registered Agent (Exhibit 13) on behalf of the dissolved entity "Aristocrat Motor Co. Inc.". The resignation document was filed in an apparent attempt to officially terminate Spenserv's role as the registered agent for the defunct company. Accompanying the Statement of Resignation was a letter (Exhibit 13a) that was **addressed to "Aristocrat Motor Co., Inc.", Attention: Horst Schwab, and dated October 2, 2024. The letter stated in short:

Mr. Schwab,

Our firm has represented Aristocrat Motor Co. Inc. ("the Company") in connection with general business matters…. As you know, said Company was voluntarily dissolved on August 4, 2000. As of the date of this letter, Spenserv, Inc. is hereby resigning as the Missouri registered agent. For said Company… This letter is a formal notice of the conclusion of our firm's attorney – client relationship with said Company. We have no responsibility for continuing legal matters on behalf of said Company. We appreciate the opportunity we had to work with Aristocrat Motor Company Inc. (Exhibit 13a)

**261.** However, this letter, filed after Horst Schwab's death (which occurred just days after Horst death), was part of a series of actions intended to retroactively legitimize the registration and falsely suggest that Aristocrat Motor Co. Inc. still held some legal standing, despite its dissolution nearly 24 years prior. The filing and accompanying letter raise serious questions about the Defendants' intent to misrepresent the legal status of the dissolved corporation in their ongoing defense, potentially to evade legal responsibility and continue their fraudulent conduct concerning the loan agreements.

**262.** On or about October 26, 2024, the Plaintiff Chapter incorporated the name Aristocrat Motor Company Inc. in the state of Missouri. (Exhibits 20A, 20B) and formed and incorporated Aristocrat Motor Inc. in the state of Kansas. (Exhibit 20C)

**263.** On October 28, 2024, the plaintiff, Chapter as an individual, sent Aristocrat Motor Co. Inc. a demand, demanding that Aristocrat Motor Co. Inc. release her from any obligations under the Aristocrat Motor Co. Inc. credit agreement contract and retail installment contract. (Exhibits 1, 10, 10a, 10b). The Plaintiff further demanded Aristocrat Motor Co. Inc. release any and all private parties from all contractual agreements which a consumer may have entered into when Aristocrat Motor Co. Inc. during the time the corporation acted and entered into loan agreements, while dissolved as a

corporation during the years of 2000- 20024. On October 29, 2024, the Plaintiff Chapter acting as present of Aristocrat Motors entered into an agreement with the Plaintiff Chapter as an individual and released her from the credit agreement and retail installment contract, keeping the arbitration provision in full force. (Exhibits 1, 10). Further, Aristocrat Motor Co. Inc. released any private parties and citizens from any contractual obligations that they had with Aristocrat Motor Co. Inc. during the time the corporation was dissolved.

**264.** On November 12, 2024, Defendants Spenserv, Inc. and Blane Markley; and Blane Markley, in his capacity as Vice President of Spenserv, Inc., (firm) filed a Certificate of Resignation of Resident Agent without Appointing a Successor with the Kansas Secretary of State for Armoco, Inc. (Exhibit 14) (Armoco, Inc. original name was Aristocrat Motor Co. Inc. before the Horst and Setzler Amended -Exhibit 8)) on behalf of the Defendants, Horst Schwab, Edward A. Setzler, Manfred Hetzel, Terry Buchholtz, Ernie Tumminia, Nick Allen (Exhibits 6, 9,8)

**265.** On January 28, 2025, the Defendants Leck, Spenserv, Inc., and Blane Markley, in his capacity as Vice President of Spenserv, Inc., (firm) filed a Certificate of Resignation of Resident Agent without Appointing a Successor with the Kansas Secretary of State for Armoco, Inc. (Exhibit 15) (Armoco, Inc. original name was Aristocrat Motor Co. Inc. before the Horst and Setzler Amended - Exhibit 8)) on behalf of the Defendants, Horst Schwab, Edward A. Setzler, Manfred Hetzel, Terry Buchholtz, Ernie Tumminia, Nick Allen (Exhibits 6, 9,8)

**266.** Defendants Spenserv, Inc. resigned from Aristocrat Motor Inc. and ARMOCO Inc., formerly Aristocrat Motor Co. Inc., 24 years after the dissolution of both companies, only after the Plaintiff's Chapter, Christopher's discovery. (Exhibits 13, 13a,14,15)

**267.** Plaintiff Snowy Owl LLC made the strategic decision to register a fictitious name under the doing business as (d.b.a.) designation as "Aristocrat Motors" (Exhibit 23). Upon conducting research, the Plaintiff discovered that the name "Aristocrat Motors" was also not currently registered by any other party in the state of Missouri. In fact, the name was still available for anyone to claim on a first-come, first-served basis. This registration allowed the Plaintiff Snowy Owl LLC to assert control over the name and prevent any future claims by the Defendants or other parties attempting to use the name for fraudulent purposes. By taking this action, Plaintiffs ensured that the name "Aristocrat Motors" would no longer be available for misuse and continued to protect legal and financial interests and protect the public from the Defendants' acts detailed herein.

**268.** As the Plaintiff Chapter continued her efforts to uncover the truth about the fraudulent loan, she discovered that the Defendants were not merely misrepresenting the identity of the contracting parties but were actively engaging in deliberate efforts to evade legal responsibility and further entrench their fraudulent conduct. Upon further investigation, it became evident that the Defendants, in particular T.E.N. Investments Inc., Turner, Soave Automotive Group, and their counsel (Case Linden P.C. and Patrick Linden, Jamie Welch, Trevor Bond, Kevin Case, Marion, Hellweg, Kevin, Anthony Soave and his associates, Turner, Kraft Tool Company, Robert Meyer, Marilyn Meyer, Jones, Santander Consumer and its sister company and officers and employees ), began to dismantle and distance themselves from the dissolved corporation “Aristocrat Motor Co. Inc.”, all while continuing to hold themselves out as the rightful parties to the alleged loan agreement. (Exhibit 10, 10a, 10b).

**269.** On October 30, 2024, the Plaintiff Chapter attended a deposition in Chicago with the Defendants' lead counsel, Patrick Linden. The deposition was officially recorded by Defendants Donna L. Policicchio, and Vertext, LLC, During the deposition, the Plaintiff explicitly asked Patrick Linden to clarify which parties he was representing and whose interests he was asserting during the litigation and deposition. On the record, Defendants Linden, Case Linden P.C. confirmed that he was representing the following parties: T.E.N. Investments Inc., Turner, Angela, Jones, Soave Automotive Group, Hellweg, Kevin, Marion, and “Aristocrat Motors”. This statement by Defendant Linden, Case Linden P.C., Case Linden P.C., Kurtz Buck P.C. was significant because it reaffirmed the Defendants' misrepresentation regarding the true parties to the contractual agreements and the fraudulent loan transaction. The Plaintiff was misled into believing that the Defendants were the rightful parties to the loan, dealership, and originator of the original loan as a result, continued to suffer emotional distress during the deposition.

**270.** On October 30, 2024, during the deposition, the first documents presented by Defendant Linden, Case Linden P.C. to the Plaintiff were the "Aristocrat Motor Co. Inc. Credit Application” documents (Exhibit 10, 10a, 10b). At this point, the Plaintiff had already recognized the Defendants' misrepresentations involving T.E.N. Investments Inc., Turner, Angela, Jones, Soave Automotive Group, Hellweg, Kevin, and "Aristocrat Motors", and their legal counsel.

**271.** The Plaintiff immediately pointed out to Mr. Linden during the deposition that the credit application (Exhibits 10, 10a, 10b) clearly identified a different entity, "Aristocrat Motor Co. Inc.", as the true party to the contractual agreements and such was the dealership behind loan at issues which

had an entirely different set of principles and officers and was a completely separate and different entity then any of his clients in which none were his clients.

**272.** The Plaintiff Chapter then explained on the record of the deposition to Defendant Linden and Case Linden P.C. that his clients were not the real parties to the contract at issue. The Plaintiff then entered into her suitcase and presented Aristocrat Motor Co. Inc. documents that explained that the corporation that appeared on the credit application (Exhibits 10, 10a, 10b) was the same corporation's name "Aristocrat Motor Co. Inc. that appears on the documentations of the subject loan; and had been dissolved for over 24 years. And moreover, the dissolved corporation "Aristocrat Motor Co. Inc. has its principal place of business in Smithville, Missouri and "Aristocrat Motor Co. Inc.", two dissolved corporation that had been inactive for nearly 24 years, is the real party of interest and the original promisor to the contract. (Exhibit 7) The Plaintiff then went into her suitcase and presented the dissolution documents of Aristocrat Motor Co. Inc., Exhibits 2, 3,4,5,6,7, 8,9,10, 10a,10b, 11,12,13, 13a, to the Defendant Linden, and Case Linden P.C.

**273.** Further, the Plaintiff Chapter testified under oath that she never conducted business with T.E.N. Investments Inc. dealership or purchased a vehicle from said entity or any of the other Defendants or entities in which Case Liden P.C. and Linden were representing.

**274.** The Plaintiff Chapter went on to state at the deposition, T.E.N. Investments Inc. is not the dealership behind the automobile loan. The Plaintiff explained on the record that her only dealings were with Aristocrat Motor Co. Inc., which had been dissolved long before the events at hand. The Plaintiff's testimony directly challenged the Defendants' assertion that they were the rightful parties to the loan agreement, reinforcing the Plaintiff's claim of fraud and misrepresentation at the deposition while being video recorded.

**275.** At the deposition, the Plaintiff Chapter has difficulties with her eyesight and was physically assaulted (unrelated to the issues at hand). To assist with this, she had brought a suitcase containing key documents that detailed that Aristocrat Motor Co. Inc. was a dissolved corporation before the Plaintiff herself later incorporated the entity "Aristocrat Motors Co. Inc." and trade name "Aristocrat Motors" just days before the deposition (Exhibits 20A, 20C, 22, 70).

**276.** During the deposition, Defendants Linden, the law firm, and his clients were representing the Plaintiff's Chapter's interest in her company, Aristocrat Motor Co. Inc.," and the Plaintiff Snowy Owls interest in its d.b.a. Aristocrat Motors during the deposition. Neither of the Plaintiffs ever hired Mr. Linden, or Case Linden P.C., to represent any of their companies interests in the contractual

agreements or pose as their attorney or legal counsel during the deposition. The Plaintiff, Chapter, had been released from the contractual agreement on October 29, 2024. T.E.N. Investments Inc. d.b.a. for Aristocrat Motors expired on or about November 24, 2009, long before any issues related to herein existed (Exhibits 24,25).

**277.** During the deposition Defendant Linden and Case Linden P.C. attempted to convince the Plaintiff Chapter and her Corporation Aristocrat Motor Co. Inc. on the record that she was wrong about his clients misrepresenting themselves and regarding the entity Aristocrat Motor Co, Inc., Mr. Linden then began questioning her understanding of corporate structure and even the concept of a "Doing Business As" (DBA) designation. In response, the Plaintiff retrieved several exhibits from her suitcase, which were organized with color strips to help her identify specific documents due to her visual impairments. After a break for lunch, the Plaintiff, videographer, and stenographer left the private room, but Defendant Linden remained behind. The Plaintiff had an instinct to return to the room to retrieve her suitcase, which contained important evidence she intended to place on the record. Upon returning, she noticed that the shades in the room, which had previously been open, were now drawn down, and the door was locked, whereas it had been open earlier. Although the Plaintiff could hear movement inside and heard Linden speaking on the phone, he kept repeating “she knows she knows, she knows about Aristocrat. It took approximately two -three minutes for Mr. Linden to open the door after she knocked. Once the Plaintiff entered the room and approached her suitcase, she noticed her suitcase had been moved she then took her suitcase with her. When the deposition resumed after lunch, the Plaintiff requested that Mr. Linden allow the judge to intervene, as she believed the deposition was being conducted for an improper purpose—namely, that the Defendants and their counsel were not the parties to the contractual agreement and had misrepresented the facts to the court and the Plaintiff throughout the litigation.

**278.** However, Defendant Linden was able to convince the magistrate judge that the Plaintiff was simply confused, and the deposition continued. Upon later examining her suitcase during the deposition, the Plaintiff immediately noticed that several of her documents were missing and appeared to have been rearranged. The color-coded arrangement, which had been carefully organized for her visual impairment, was no longer in order as it had been before. Additionally, the Plaintiff discovered that the crucial documents detailing her reincorporation of "Aristocrat Motor Co. Inc."— and the original release of obligation to the agreement she obtained from her reincorporated Corporation, Aristocrat Motor Co. Inc, which was notarized, had disappeared from her suitcase. These documents were vital to the Plaintiff's case, as they clearly showed her legal action to revive the corporation and

countered the Defendants' false claims about the identity of the real party to the contractual agreement. Mr. Linden took the Plaintiff's formation documentation and release of agreement out of her suitcase, evidence tampering, which significantly undermined the integrity of the deposition.

**279.** Upon Defendant Linden's discovery that the Plaintiff Chapter had uncovered a critical part of the issues at hand regarding the misrepresentation of the contractual party, he instructed Case Linden P.C. to file the Plaintiff's past criminal conviction once again but in the federal case during the time of the deposition. Although the Defendants had done the same acts in the state case, which the Plaintiff had placed on the record of the state court case (the year of 2023), documentation evidencing that no conviction exists and that the conviction of two misdemeanors had been vacated., set aside and superseded by a not guilty verdict. The original criminal complaint was dismissed, and the conviction had been vacated, but the Defendants nonetheless filed the outdated and vacated conviction into the public court record during the ongoing deposition. While the deposition was taking place, the Plaintiff received notification that the defendant's submission had been filed in the court record. This filing of a criminal conviction that no longer existed in the eyes of the law, was a deliberate attempt by the Defendants to use irrelevant and prejudicial information against the Plaintiff to undermine her credibility and intimidate her during the litigation.

**280.** After this filing, Defendants Linden and Case Linden P.C. proceeded to present this false evidence to the Plaintiff during the deposition. Defendants' Case Linden P.C. and Mr. Linden went on to falsely assert during the deposition that the Plaintiff Chapter had been convicted of a felony—a claim that was false. The Plaintiff had never been convicted of any felonies and has never had a felony on her record. Mr. Linden stated that the recording of the deposition was for the public and the jury to view. The conviction of two misdemeanors had been overturned, and the Plaintiff had never been convicted of a felony she expressed. The presentation of this false information by the Defendants was an attempt to mislead and prejudice the Plaintiff in the eyes of the court, as it had no relevance to the facts of the case. The Plaintiff's prior conviction was vacated, and any reference to it was both legally and factually irrelevant, designed solely to discredit the Plaintiff and intimidate her during the litigation. (All was done on video recording during the deposition)

**281.** During the deposition, Plaintiff Chapter expressly informed Defendants Case Linden P.C. and Patrick Linden that she would require time to clarify the record and present additional supporting documents to ensure an accurate and complete account of the facts. This request was made at the outset of the deposition, with the Plaintiff emphasizing the importance of her ability to address misstatements and provide critical context. Despite this clear request, the Defendants failed to

honor or accommodate the Plaintiff's right to meaningfully participate in her own deposition. When the Plaintiff reiterated her request later in the proceeding, Defendant Patrick Linden stated on the record that he was out of time and that he needed to leave immediately to catch a flight, thereby denying the Plaintiff any opportunity—even a single minute—to clarify or supplement the deposition record. Upon information and belief, Defendant Linden's claim about having a scheduled flight from Chicago, Illinois, on the night of the deposition was false or misleading, and made in bad faith to terminate the deposition and suppress further statements or documents from the Plaintiff that could have exposed misrepresentations by the Defendants. This conduct obstructed the Plaintiff's ability to place material facts on the record and deprived her of a fair and complete deposition process, contributing further to the ongoing pattern of procedural abuse and concealment by the Defendants.

**282.** Defendants Veritext LLC and Policicchio, who were retained by Defendants Case Linden P.C., Patrick Linden, Jamie Welch, Turner, Marion, Jones, Angela, Hellweg, Soave Enterprises, T.E.N. Investments Inc., Soave Automotive Group, Kevin, Anthony Soave, Santander Consumer USA, and its affiliates, were responsible for conducting and recording the Plaintiff Chapter's deposition. At the conclusion of the deposition, Veritext LLC and Policicchio informed both Plaintiff Chapter and Defendants Case Linden P.C. and Patrick Linden that several exhibits were missing from Policicchio possession. Mr. Linden quickly stated that he would provide Policicchio with the exhibits at a later date and requested that she send him the exhibits that were missing by email. Notably, Mr. Linden was the only individual left alone in the deposition room during the lunch break, at which time the Plaintiff's suitcase containing key documents was unattended. Following the break, the Plaintiff discovered that multiple documents were missing, including materials she had explicitly wanted to reference and placed on the record, such as those concerning the dissolution status of Aristocrat Motor Co., Inc. These missing exhibits documents were critical to the Plaintiff's claims and central to establishing that the Defendants had misrepresented the real party to the contract. The Plaintiff had taken measures to organize and secure the documents, and their unexplained disappearance, particularly under circumstances where only Mr. Linden had access to the room, raises serious concerns of potential evidence tampering.

**283.** Following the disturbing event of the deposition on November 1, 2024, the Plaintiff Chapter sent Defendants Veritext LLC, Donna L. Policicchio, an email and stated: (Exhibits 80, 81)

Dear, Ms. Policicchio,

I would like to memorialize the finishing comments at the end of the deposition, which took place on October 30, 2024, at the deposition. Patrick Linden and I was

```
informed by you that most of the exhibits that Mr. Linden presented during the
deposition Mason in which Patrick Lennon then stated that he would provide those
to you at a later date please confirm that you did not have the exhibits presented
during the deposition given to you to attach to the transcript and that they were
to be provided to you at a later date could you also confirm how many exhibits
were missing from the record?
```

**284.** On November 1, 2024, Peggy Nelson returned the Plaintiff Chapter's email and stated that the court reported does not have in her possession the following Exhibits 8,9,10,11,13,14,15. And that she has reached out to Attorney Linden regarding this issue. And stated if the Plaintiff has any of these exhibits in her possession, please forward them immediately to Veritext at the address listed on the business card she provided to you…. (Exhibit 82).

**285.** Sometime after November 1, 2024, Defendants Veritext LLC and Policicchio, who were retained by Defendants Case Linden P.C., Patrick Linden, Jamie Welch, Turner, Marion, Jones, Angela, Hellweg, Soave Enterprises, T.E.N. Investments Inc., Soave Automotive Group, Kevin, Anthony Soave, Santander Consumer USA, and their affiliates, jointly created and added exhibits to the deposition record that were not presented at the deposition. The official deposition transcript included exhibits that were not the same for they had not been presented to the Plaintiff Chapter during the actual deposition proceedings and recording of the deposition. Such were later added after the conclusion of the deposition. Defendants' actions were an abuse of process and abuse of power, for their actions significantly altered and shifted the plaintiff's testimony under oath and it changed the plaintiff's testimony for the testimony was based upon loan documentation. The Defendants worked together to alter the Plaintiff's testimony and unilaterally selected and substituted material, —outside of Plaintiff Chapter's knowledge or participation, to replace the exhibits that were reported missing after the deposition and not found in the possession of the court reporter, Policicchio. Altering testimony and adding exhibits outside of the deposition is not a court reporter's practice. Policicchio and Veritext acted outside of their legal roles and employment duties when adding new exhibits to the record that were not presented at the deposition and after the deposition had been concluded. The Plaintiff was not included or consulted in the communications between Defendants and Veritext LLC regarding which documents would be officially entered into the deposition record in place of the missing exhibits. This exclusion of Plaintiff from the post-deposition exhibits reconstruction process, combined with the prior loss of critical documents while in the Defendants' presence, constitutes a serious procedural irregularity. These actions severely undermine the integrity of the deposition and support the Plaintiff's broader allegations of coordinated misconduct, concealment of material facts, and obstruction of justice by the Defendants and those acting on their behalf.

**286.** On January 7, 2025, the Defendants Veritext, and Policicchio sent the Plaintiff Chapter an altered deposition transcript that included exhibits that were not a part of the record of October 30, 2024. (Exhibits 83, 84)

**287.** Sometime after November 2024 the Defendants Veritext LLC and Policicchio, who were retained by Defendants Case Linden P.C., Patrick Linden, Jamie Welch, Turner, Marion, Jones, Angela, Hellweg, Soave Enterprises, T.E.N. Investments Inc., Soave Automotive Group, Kevin, Anthony Soave, Santander Consumer USA, and its affiliates, jointly created exhibits to add to the deposition record although the exhibits that were added to the deposition record were not the same exhibits that were presented to the plaintiff during the deposition the defendants jointly communicated without chapter Jackson's involvement in deciding which exhibits would be placed on the record that would replace the missing exhibits that were not in the court reporters Policicchio possession after the deposition was concluded. The defendants did not include the plaintiff as a party in the communications between them when they decided which exhibits would be placed back on the record. The actions of the Defendants and those acting on their behalf—including Veritext LLC and Policicchio—further compromised the fairness and integrity of the deposition process and support the Plaintiff's broader claims of coordinated efforts to conceal material facts and obstruct justice.

**288.** *Aristocrat Motor Co., Inc.* was administratively dissolved in or around late 1999 or early 2000. In 2018, despite its dissolved status, the entity purportedly delivered a credit application (Exhibit 10,10a,10b) to Petitioner Chapter and entered into a retail installment contract (Exhibit 1), thereby attempting to obligate her to a loan with a 24.90% interest rate. In 2024, Petitioner discovered that the entity behind the alleged loan was not a valid or active corporation. Consequently, she lawfully incorporated a new entity under the name *Aristocrat Motor Co., Inc.*, established a legitimate business, and terminated the fraudulent contractual agreement and loan obligation originally executed with the defunct corporation. Petitioner then initiated legal action against the individuals who had acted as officers of the dissolved corporation. She is now, and has been since October 2024, the duly authorized President of the newly incorporated *Aristocrat Motor Co., Inc.* At no point did she retain or authorize Defendants Gold or and Lathrop GMP LLP to act as legal counsel for her or the corporation or in the interest of Aristocrat Motor Co. Inc; nor did Petitioner hire/ retain the attorney and or law firm to make a written demand on its behalf. Nevertheless, on or about December 20, 2024, Defendants Gold, and Lathrop GMP LLP represented themselves and acted upon Aristocrat Motor Co, Inc. interests via email as the attorney for *Aristocrat Motor Co., Inc.*, and made a demand on behalf of the entity to Petitioner Chapter without authorization and demanded the Petitioner to dismiss

Aristocrat Motor Co. Inc from the suit. Gold and Lathrop GMP email states in relevant part "You need to dismiss Aristocrat Motor Co. Inc. and add the proper parties" (Exhibit 85). At the time the email was sent and misrepresentations were made by the Defendants, it was public record the Petitioner was the owner of said corporation.

**289.** Defendants Gold or and Lathrop GMP LLP then sent another demand asserting that the Aristocrat Motor Co Inc had been dissolved for nearly 25 years (Exhibit 86), yet the Defendants represented the dissolved corporation's interest and demanded the suit against the dissolved corporation who gave the Petitioner a loan be dismissed in the email Exhibit 85.

**290.** Defendants Gold and/or Lathrop GPM LLP engaged in the unauthorized practice of law by purporting to represent *Aristocrat Motor Co., Inc.*, despite not being retained by the Petitioner or the lawfully incorporated entity. Their conduct constituted a deliberate attempt to shield the individual shareholders and officers of the dissolved corporation from personal liability—liability that attaches due to their conduct of business on behalf of a corporation that had been administratively dissolved. Defendants knowingly and fraudulently held themselves out as authorized representatives of the newly incorporated *Aristocrat Motor Co., Inc.*, despite lacking any authority to do so. This conduct amounts to fraudulent concealment, abuse of authority, and fraudulent misrepresentation. Defendants were fully aware that the officers of the dissolved corporation bore personal liability, having forfeited the protection of the corporate veil. Further, Defendants' actions constituted unauthorized business practices, civil conspiracy, false representation of authority, and corporate identity misuse. Their misrepresentations were part of a broader effort to have the lawsuit against the dissolved corporation's officers dismissed, and to enforce a fraudulent loan that their clients had arranged. Defendants knew or should have known that the loan was void or unenforceable, particularly given that the Petitioner Chapter was unaware at the time that the original *Aristocrat Motor Co., Inc.* had been dissolved as pled in the petition. Nevertheless, Defendants 'Gold/Lathrop GPM LLP clients Hetzel, Manfred, Schwab, and Terry continued to represent the entity as the original dealership and assignee of the loan, thereby compounding the fraud. (Exhibits 10, 10a, 10b, 85,86)

**291.** Defendants Kevin Case, Trevor Bond, Case Linden P.C., Patric Linden, Jamie Welch, and Case Linden Jurtz Buck P.C. engaged in an abuse of process, fraudulent concealment, and abuse of power by willfully failing to comply with **Federal Rule of Civil Procedure 26(a)(1)(A)(iv)**. (Exhibit 87 page 5) Specifically, they did not disclose the existence or contents of any applicable insurance agreements that may provide coverage for claims asserted in this action. Petitioner Chapter intends to

name the relevant insurance carrier as a Doe Defendant upon identification. The insurance carrier in question is believed to have issued a policy on behalf of T.E.N. Investments Inc., misrepresenting T.E.N. Investments as the dealership of record for the subject loan. In fact, T.E.N. Investments was not the dealership, nor the original contractual party or assignee to the loan agreement. The insurance carrier's failure to conduct a reasonable investigation before underwriting or providing defense financing for this litigation materially harmed the Petitioner. The actions of both the Defendants and the insurance carrier have resulted in substantial prejudice, including civil harassment, procedural disadvantage, and continued perpetuation of a fraudulent financial obligation.

**292.** Defendants Kevin Case, Trevor Bond, Case Linden P.C., Patric Linden, Jamie Welch, and Case Linden Jurtz Buck P.C. made false statements in court filing regarding an insurance policy; Defendants stated in part; "there is an insurance policy held by the dealership which may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment. T.E.N. Investments Inc. has requested a copy of that policy and a copy of that policy with the premium information redacted will be produced to the plaintiff as soon as it is received.

**293.** Defendants Kevin Case, Trevor Bond, Case Linden P.C., Patric Linden, Jamie Welch, and Case Linden Kurtz Buck P.C. made false and misleading statements to the insurance carrier by representing that *T.E.N. Investments Inc.* was the originating dealership involved in the subject loan transaction. These misrepresentations were made for the improper purpose of securing payment of attorney's fees and litigation costs under an insurance policy which belonged to T.E.N. Investments Inc. although the transaction and dealership were an entirely different entity, Aristocrat Motor Co. Inc., a dissolved corporation (Exhibit 10, 10a, 10b, 13,13a), Furthermore, Defendants falsely held themselves out to the attorneys of the dealership who originated the loan despite their clients T.E.N. Investments Inc. having no role in origination as the dealer in the credit application. Defendants knew, or reasonably should have known, that the loan originated from a **dissolved corporation**, not *T.E.N. Investments Inc.*, and that any attempt to legitimize T.E.N. Investments as the dealership of record was materially false. These misrepresentations constitute fraud, abuse of process, and were intended to shield the actual responsible parties—namely, the officers and shareholders of the dissolved entity—from liability, while improperly shifting defense costs to an uninformed insurer. (Exhibit 87 page 5)

**294.** Defendants Kevin Case, Trevor Bond, Case Linden P.C., Patric Linden, Jamie Welch, and Case Linden Kurtz Buck P.C. misrepresented material facts to the Court by asserting that T.E.N.

Investments Inc. was the dealership involved in the underlying vehicle transaction. These representations were made in both court filings and oral proceedings. By asserting that T.E.N. Investments Inc. was the originating dealer, Defendants knowingly advanced a false narrative that misled the Court and prejudiced the Petitioner Chapter. Such misrepresentations are particularly egregious because they were made by licensed attorneys—officers of the court—whose sworn ethical obligations compel truthfulness and candor in all proceedings. The Court, relying on the assumption that counsel were making statements in good faith and consistent with their professional duties under Rule 11 of the Federal Rules of Civil Procedure, understandably accepted these representations as truthful. However, the attorneys used their positions and law licenses not to clarify but to distort the record, thereby perpetrating a fraud upon the Court and the Petitioner. These actions amount to a willful abuse of judicial process and professional misconduct under applicable Rules of Professional Conduct. Moreover, they formed part of a broader scheme to legitimize a fraudulent loan and shield the actual responsible parties—officers of a dissolved corporation—from liability. Defendants obtained payment of their attorney fees from an insurance company through their misrepresentations and created a billing forum at the Petitioner's Chapter expense. In violation of Rule 3.3 of the ABA Model Rules of Professional Conduct regarding candor toward the tribunal.

**295.** Defendants Kevin Case, Trevor Bond, Case Linden P.C., Patric Linden, Jamie Welch, and Case Linden Kurtz Buck P.C. made material misrepresentations by falsely presenting themselves as authorized representatives with the authority to negotiate the subject loan and to initiate a vehicle buyback offer from Petitioner Chapter. These Defendants knowingly acted outside the scope of lawful representation, as they were aware that their clients were not the dealership of record and had no contractual relationship with the Petitioner regarding the original loan agreement or vehicle transaction. Such conduct constitutes a deliberate attempt to mislead the Petitioner and to further a scheme to validate a fraudulent transaction, while concealing the lack of proper dealership status or contractual standing on the part of their clients. These actions demonstrate bad faith, abuse of legal process, and a continued effort to deprive the Petitioner of her rights through misrepresentation and unauthorized negotiation.

**296.** *T.E.N. Investments Inc.*, *Soave Automotive Group*, *Soave Enterprises LLC*, and, more recently, *KCMER Investments Inc.* have each represented themselves as doing business under the name "Aristocrat Motors." In addition, *Aristocrat Motor Co., Inc.* has also held itself out as doing business as "Aristocrat Motors." These entities, despite being legally distinct, share overlapping officers and directors, many of whom serve on multiple boards across the various corporations.

Notably, Anthony Soave is associated with and holds a position of authority within each of these entities. These corporations have used the "Aristocrat Motors" as doing business as Aristocrat Motors at multiple business locations in both Kansas—including, but not limited to, 9400 W. 65th Street, and Missouri, including addresses on Madison Avenue. T.E.N. Investments Inc. is incorporated in Kansas and filed to in the state of Missouri.

**297.** The simultaneous and overlapping use of the "Aristocrat Motors" name by these related entities, many of which operate from the same or nearby locations, has resulted in a high likelihood of consumer confusion, which allows the Defendants to extend the reach of their fraud. This conduct makes it extremely difficult, if not impossible, for consumers, including the Petitioner Chapter, to determine which legal entity she transacted with, if any. Such activity raises significant concerns under U.S. trademark law (Defendants have violated **U.S. trademark law** under the **Lanham Act (15 U.S.C. §§ 1051 et seq.)** and consumer protection statutes regarding misleading business practices and corporate identity misuse. Defendants have used the Aristocrat Motors trade name in several of their very own individual entities and corporations which they hold a position as an officer of in the same industry and or region. Defendants using the same or confusingly similar trade names across different entities constitute **trademark infringement** or **unfair competition, for it is in the same industry and region**. Aristocrat Motors is the Defendants and its shareholders and officers alter ego. The "Aristocrat Motors" trade name has been strategically misused across several corporate entities controlled by the same officers and shareholders, evidencing that these entities function as alter egos of one another in furtherance of deceptive schemes.

**298.** In late 2024, upon learning that the Petitioner Chapter had lawfully incorporated *Aristocrat Motor Co., Inc.* and discovered that the original loan originated from a dissolved entity, the Defendants—including T.E.N. Investments Inc., its shareholders, and its retained legal counsel—allegedly initiated a pattern of intimidation and retaliation against the Petitioner. These actions escalated into what appears to be targeted harassment and surveillance intended to coerce the Petitioner into abandoning her rights to the corporate identity and related legal claims. In May 2025, an unidentified individual—herein referred to as **John Doe**—unlawfully entered the Petitioner's private, non-public premises under false pretenses. John Doe falsely represented that he had been sent by a church that had previously purchased products from the premises, which was not open to the public. Once inside, he began to visually survey the property, appearing to wear concealed recording equipment and scanning the premises as though searching for security cameras.

**299.** John Doe engaged Jane Doe, in conversation under suspicious circumstances. During this interaction, he deliberately revealed what appeared to be a pistol and thick black zip ties, in a manner intended to intimidate. Alarmed and unsure whether he was law enforcement or an intruder, Jane Doe attempted to de-escalate the situation. John Doe then left the premises to retrieve a box from a black Toyota SUV, deliberately leaving the entry door open, further elevating safety concerns. Upon re-entering, John Doe approached Jane Doe without identifying himself and stated, "I have something for you. I'm still going to buy, but I have this for you." He attempted to hand her a handwritten note and placed additional documents on a nearby table. When instructed to leave the premises, he took the documents with him and exited.

**300.** The handwritten note—later reviewed—contained personal and private information, including the names and home addresses of Petitioner's family members in tiny typewriting words. This encounter, when considered in context—including John Doe's false identity, concealed weapon, the mention of being "wired up," and his unauthorized surveillance—suggests an intentional act of intimidation, unlawful surveillance of private premises, and violation of t privacy. Shortly after this incident, it was discovered that all the bees on the premises—part of an ongoing agricultural operation—were dead, with evidence suggesting they may have been poisoned using pesticides. Petitioner reasonably believes this intruder was sent by the Defendants in a continued effort to harass, surveil, or possibly inflict harm upon her. The use of false pretenses, recording devices, concealed weapons, and access to private information points to a coordinated effort to invade the Petitioner's private affairs, threaten her physical safety, and interfere with her lawful exercise of corporate and legal rights to attempt for the Petitioner to relinquish the Aristocrat Motor Cooperation in which she owns and the trademark.

**301.** Dealtrack Technologies, Inc. provided false loan documents on behalf of a dissolved corporation, Aristocrat Motor Co. to assist in fraudulently securing an automobile loan and loan obligation under the Petitioner Chapter Jackson Credit. Defendants Dealtrack Technologies provide sham web-based software solutions for the automotive sham deal and provided such for the alleged loan herein. Defendants provided fraudulent services, including sham and fraudulent dealer management systems (DMS), fraudulent finance and insurance (F&I) tools, fraudulent digital retailing analysis, and registration and titling services.

**302.** On multiple occasions, the Petitioner, Chapter, formally requested access to inspect the original loan documents; however, the Defendants willfully denied these requests. This refusal persisted even

after a state court issued an order directing that the Plaintiff be permitted to inspect the original loan documentation. Upon information and belief, Defendants T.E.N. Investments Inc., Kevin Case, Patrick Linden, Santander Consumer USA Inc., Santander Consumer Holdings, Chrysler Capital LLC, Anthony McCoy, Soave Automotive Group, Kayce Jones, an individual identified as Marion, Soave Enterprises, Anthony Soave, Trevor Bond, and the law firm Case Linden P.C., knowingly altered, falsified, or otherwise doctored the original loan documents in question.

**303.** Defendants T.E.N. Investments Inc., Soave Automotive Group Inc., KCMER, Soave Enterprises, and other associated parties are seeking to obtain the trademark "Aristocrat Motors" not for legitimate business purposes, but rather as part of a broader scheme involving fraud, loan-related misconduct, and activity consistent with organized criminal enterprises, in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), as further detailed herein. Upon information and belief, Defendants have initiated a malicious and abusive civil action against the Petitioners to improperly acquire the trademark. Such conduct constitutes an abuse of process and is in direct violation of U.S. trademark law, which prohibits the use of trademarks for fraudulent purposes. Trademarks exist to protect bona fide businesses and to prevent consumer confusion—not to serve as instruments of deception or commercial coercion. Defendants' actions appear to weaponize trademark law in furtherance of illegitimate objectives.

***Prayer for Relief***

Petitioner'/Plaintiff' pray the court enforce the multiple arbitration agreements and stay the case and order arbitration.

Respectfully Submitted,
The Law Offices of Angela Swan

/s/Angela Swan

Attorney for Petitioner'/Plaintiff'
21151 S Western Ave. Ste. 177
Torrance, CA 90501